Argued September 13, reversed and remanded December 27, 1978

JOHNSON, *Appellant,*
*v.*
COMMERCIAL BANK et al, *Respondents.*
(No. 97048, SC 25518)

588 P2d 1096

Catherine Zorn, Salem, argued the cause and filed briefs for appellant.

Robert J. Saalfeld of Harland, Ritter, Saalfeld & Griggs, Salem, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Tongue, Bryson, and Linde, Justices.

BRYSON, J.

## BRYSON, J.

Plaintiff brought this creditors' suit, as an individual and as personal representative of the estate of Elmer H. White and Ruth M. White, deceased, to recover wages due her for nursing services rendered to the deceased parties.

Deceased Elmer, as trustor, entered into a trust agreement with defendant bank as trustee and both Elmer and Ruth transferred all their assets into the trust and therefore both their estates were insolvent. The other defendants are the beneficiaries of the trust which contained a spendthrift clause. Plaintiff's complaint sought to reach the trust assets in this suit for payment of her wages and claims filed in the two estates.

At the conclusion of the trial the trial court held as a matter of law that the assets of the trust could not be reached by plaintiff, as a creditor of the Whites: "[a]nd even though Mrs. Johnson may have performed the services, maybe she's entitled to be paid for those services, the Commercial Bank is not authorized to pay for those services out of the trust estate." The trial court dismissed the complaint and plaintiff appeals. We review de novo.

On September 9, 1969, Elmer, as trustor, entered into a trust agreement with defendant bank as trustee. Under the terms of the trust, income from the corpus went first to Elmer for his life, then to his wife, Ruth, for her life, then to their children for their lives, and then vested absolutely in the grandchildren. The trust agreement had a spendthrift provision which provided:

### "ARTICLE V

"Neither the principal nor the income of the trust estate shall be liable for the debts of any beneficiary hereunder, nor shall the same be subject to seizure by any creditor of any beneficiary under any lien or proceeding at law or in equity, and no beneficiary hereunder shall have power to sell, assign, transfer,

[ 677 ]

encumber or in any other manner to anticipate or dispose of his or her interest in the trust estate or the income produced thereby."

Elmer and Ruth contributed approximately equal amounts into the trust as assets which had a total value of approximately $322,000. Elmer, the trustor, retained the power to revoke or alter the trust at any time and to withdraw the corpus from the trust estate.

Following the execution of the trust agreement, Elmer executed his will, leaving his entire estate to his wife, Ruth, and if she predeceased him then, in that event, to the trustee in trust. Ruth executed a similar will. Defendant bank was named personal representative in both wills. Upon the deaths of both Elmer and Ruth, all of their assets were in the trust corpus, their estates were insolvent, and therefore the bank did not petition for the probate of either will.

In October, 1970, Elmer hired plaintiff, a practical nurse, to care for him. His physical condition required extensive physical therapy and nursing care. Plaintiff worked a 12-hour shift at $2.50 per hour. After the first three months she worked on a live-in basis. In late 1971 Ruth White became ill and had to be hospitalized. When Ruth came home, plaintiff cared for her as well as for Elmer. Plaintiff testified that the Whites agreed to pay her additional wages for these additional services in the amount of $1.25 per hour, or $15 per day. The defendants disputed this testimony, asserting that plaintiff had agreed to care for Mrs. White for no additional pay. This is the issue on which the trial court made no findings.

Plaintiff performed the extra services from January, 1972, until April, 1973, the date of Elmer's death. Plaintiff continued to care for Ruth until May, 1973, when Ruth was taken to a nursing home. Plaintiff was paid for her nursing services for one patient but was never paid for the additional services. Plaintiff billed the defendant bank, as trustee, for her services performed. The bank refused payment because it was

unable to verify the arrangement with members of the deceaseds' family or its records. Plaintiff testified that because the trust was not producing enough income, Elmer and Ruth were not able to pay her the extra wages but that they agreed to pay her out of their estates.

Ruth White died in October, 1974. As a creditor, plaintiff, on petition, was appointed personal representative of each of the estates of the Whites. The bank and the beneficiaries under the terms of the trust had notice of the appointment and of plaintiff's claim submitted in the probate proceedings for the amount of wages due her. Neither the bank nor the beneficiaries contested the claim. The probate court approved the claim. As stated, the decedents had transferred all of their funds to defendant trustee; therefore the estates were without assets so plaintiff, pursuant to ORS 114.435,[1] and as an individual, brought this suit.

Assuming that the Whites did agree to pay plaintiff an additional $1.25 per hour for nursing and care of both Ruth and Elmer, the primary question on this appeal is whether the plaintiff as a matter of law can recover against assets in the trust.

Plaintiff relies on ORS 95.060, which provides:

> "All deeds of gift, all conveyances and all verbal or written transfers or assignments of goods, chattels or things in action made in trust for the person making the same, are void as against the creditors, existing or subsequent, of such person.

---

[1] ORS 114.435 provides:

"The property liable for the payment of expenses of administration, funeral expenses, claims and taxes shall include property transferred by the decedent with intent to defraud his creditors *or transferred by any means* which is in law void or voidable as against his creditors. The right to recover that property so far as necessary for the payment of those expenses, claims and taxes is in the personal representative, who shall take necessary steps to recover it. That property constitutes general assets for the payment of creditors." (Emphasis added.)

[ 679 ]

Although this statute has been in existence since 1854, Deady, General Laws of Oregon, there are no Oregon cases interpreting this statute in the context of the facts of this case; none have been cited to us and we have found none.

In construing a similar statute,[2] Kansas held that a settlor's retention of the right to control the distribution of trust assets made the trust void under the statute. *Herd v. Chambers,* 158 Kan 614, 149 P2d 583, 588 (1944). The particular trust involved in that case gave the settlor a life estate and gave contingent remainder interests to his wife; however, it appears that the court based its decision entirely upon the statute and the revocability of the trust.[3]

We see no need, in this case, to go as far as the Kansas court. It is enough to agree with that court that one's property "should be subject to the payment of his debts, although he has vested a nominal title thereto in some other persons." *Herd v. Chambers, supra,* 149 P2d at 589.

The proposition that a settlor who retains a life estate in a trust and a *general power of appointment* over the principal of the trust will be treated as the owner with respect to creditors is recognized by A. Scott, The Law of Trusts 1193-196, § 156 (3d ed 1967);

---

[2] G. S. 33-101 (1935) provided:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect."

[3] Kansas amended its statute in 1949 to read:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective." G. S. 33-101 (1949).

In *Ackers v. First National Bank of Topeka,* 192 Kan 319, 387 P2d 840 (1963), opinion clarified on denial of rehearing 192 Kan 471, 389 P2d 1 (1964), the Supreme Court of Kansas approved its commissioner's opinion that under the new statute, the settlor's retention of the power to revoke the trust made the transfer void as to creditors.

G. Bogert, The Law of Trusts and Trustees 670, § 223 (2d ed 1965); E. Griswold, Spendthrift Trusts §§ 477-478 (2d ed 1949); Restatement, Property § 328 (1940).[4] In this case, Elmer White did not have a general power of appointment, but he *did* retain the right to revoke. Article II of the trust agreement provided:

> "Notwithstanding any of the trusts and powers herein declared, the Trustor may, by written instrument executed by the Trustor and filed with the Trustee, revoke, alter, or amend this agreement at any time, or withdraw from the trust estate, discharged of the trust, the whole or any part of the capital and accumulated income upon paying all sums due to the Trustee and indemnifying the Trustee to its satisfaction against liabilities lawfully incurred in the administration of this trust."

The right to revoke is essentially the same as a general power of appointment since the person having the right to revoke may acquire the property and then appoint or give it to whomever he pleases. There being no practical difference between the right to revoke and a power to appoint,[5] we conclude that the rule stated

---

[4]Section 328 provides:

"When a person transfers property in trust for himself for life and reserves a general power to appoint the remainder and creates no other beneficial interests which he cannot destroy by exercising the power, the property, though the power is unexercised, can be subjected to the payment of the claims of creditors of such person *and claims against his estate* to whatever extent other available property is insufficient for that purpose." (Emphasis added.)

[5]The Restatement of Property recognizes this similarity in Section 318, comment *i* (1940). Curiously, however, the comment goes on to say that because the right to revoke has not customarily been treated like a power of appointment, the Restatement rules on powers do not apply to rights of revocation. We reject this approach as placing form over substance.

We also note that the settlor's retention of the right to revoke, with or without a life estate, makes him the owner for income and estate tax purposes, for computing perpetuities periods, and for determining the liability of a trustee who acts outside his proper powers with the settlor's permission. See Scott, *The Effects of a Power to Revoke a Trust,* 57 Harv L Rev 362 (1944).

by the above authorities should apply to this case.[6] We conclude that plaintiff was entitled to reach the trust assets to pay her claim.

■■ Defendants argued, correctly, that "creditors can reach the trust only to the extent of the settlor's interest," citing G. Bogert, The Law of Trusts and Trustees at 665, § 223 (2d ed 1965); A. Scott, The Law of Trusts 1192, § 156 (3d ed 1967); J. Perry, A Treatise on the Law of Trusts and Trustees 654, § 386a (7th ed 1929); and E. Griswold, Spendthrift Trusts 406, § 475 (1936). But this principle argued by defendants is not on point. Defendants cite a case[7] where the settlor gave himself a life estate with remainder to specified persons and did not retain the power to revoke. We agree that creditors could not reach the remainder interests under such facts because such conveyances give the remaindermen present vested interest in the property that cannot be defeated by any act of the settlor. Such remainder interests are present gifts that are no more subject to the claims of creditors than are any other gifts. See A. Scott, The Law of Trusts § 156 at 1192 (3d ed 1967); E. Griswold, Spendthrift Trusts § 544 (2d ed 1947). In the case at bar, Elmer did not divest himself of the remainder interests; they were subject to complete defeasance at any time during his life if he chose to exercise his right to revoke. Therefore, although the transfers by Elmer were void as against his creditors only to the extent of his interest, his interest extended to the entire trust and so plaintiff, a creditor, can reach the assets transferred by him.

---

[6] "If the trust is for the settlor for his life, with a spendthrift clause attached, and a power in the settlor to appoint the remainder interest to others, he may well be held to be the absolute owner of the trust property and his creditors may be able to reach it." G. Bogert, The Law of Trusts and Trustees 670, § 223 (2d ed 1965). (Footnote omitted.)

[7] *Greenwich Trust Co. v. Tyson,* 129 Conn 211, 27 A2d 166 (1924) (discretionary trust creating contingent remainders not subject to revocation by voluntary act of settlor).

■ Defendants also argue that plaintiff must lose because she brought this suit after Elmer died, at which time the remainders had vested. We disagree and hold that creditors may reach such assets even after the settlor dies, subject only to the usual rules of laches. The reason is that under the statute, the transfer by Elmer was *void* as against his existing or subsequent creditors. Thus, as to plaintiff, a creditor, it is as if the transfer to the trust never occurred. The fact that Elmer died will not defeat plaintiff's claim. *Accord,* Restatement, Property § 328 (1940), set out in footnote 4, *supra.*

■ This brings us to the facts of the case. We find, on de novo review, that Elmer and Ruth White did agree to pay plaintiff the extra $1.25 per hour. The contrary testimony by beneficiaries under the trust merely shows that members of the family were not aware of the agreement between plaintiff and the Whites. We are persuaded by plaintiff's testimony and the exhibits offered under the rule that the Whites agreed to pay this additional amount, as reflected in plaintiff's claim. An additional 50 percent charge, over that for one patient, was plaintiff's customary charge for nursing and caring for a second patient. This is the evidence and it does not appear reasonable that she would agree to do the extra work for no pay.

Reversed and remanded for entry of a decree not inconsistent with this opinion.