In re James M. WEST and Nancy L. West, Debtors.

Bankruptcy No. 386–00456.

United States Bankruptcy Court, D. Oregon.

Sept. 3, 1986.

Steve Scroggin of Scroggin & Mason, Beaverton, Or., for debtor.

Mark B. Block of Ransom, Blackman & Simson, Portland, Or., for trustee, John H. Mitchell.

1. The Employee Retirement Income Security Act of 1974, 29 U.S.C. sections 1001 *et seq.* (ERISA).

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This matter arises upon the trustee's objection to the Debtor's claim of exemption of his interest in a vested profit-sharing retirement plan. The Debtor's response to the trustee's objection raises two issues; first whether the funds held in the retirement plan are property of the bankruptcy estate, and second, if the funds are property of the estate, whether they are exempt under ORS 23.170 (1985).

### FACTS

The Debtor, James M. West, was employed by Intel Corporation until January 17, 1986. As an Intel employee Mr. West was an automatic participant in the Intel Profit-Sharing Retirement Plan (hereinafter referred to as the Plan). Plan section 3(a). The Plan is an ERISA [1] qualified plan and as such contains the following language:

Section 11(a) *No Assignment of Property Rights....* [T]he interest or property rights of any person in the Plan, in the Trust Fund or in any payment to be made under the Plan shall not be optioned, anticipated, assigned (either at law or in equity), alienated or made subject to attachment, garnishment, execution, levy, other legal or equitable process or bankruptcy, and any act in violation of this Section 11(a) shall be void. The restriction of this Section 11(a) shall not apply to the creation, assignment or recognition of a right to any benefit payable under the Plan with respect to a Participant pursuant to a qualified domestic relations order, as defined in the Code.

The Plan is funded by three types of contributions; salary deferrals, voluntary employee contributions and Intel contributions.[2] Since the Debtor did not make any

2. The Plan also contains a provision allowing for the accumulation of Intel stock in addition to the profit sharing account. The parties have stipulated that the Debtor's interest in this so

contributions to the Plan, his entire interest in the Plan is a result of employer contributions. As one of several thousand Intel employees, the Debtor had no interest in the corporation other than ownership of 10.6175 shares of stock which he acquired through Intel's Sheltered Employee Retirement Plan. *See* note 2. He was neither an officer nor a director of Intel, and was not a trustee or in control of a trustee of the trust fund.

An employee may not withdraw employer contributions to the Plan until the employee reaches age 60, dies, becomes disabled, or terminates employment with Intel. The Plan does contain a provision which allows participants to borrow from their vested employer contribution account. The loans are restricted in amount, are interest bearing and require repayment within five years of origination. (Ten years if the loan is used to acquire, construct, reconstruct or substantially rehabilitate the participant's home.) There is no evidence before the Court to show that the Debtor ever obtained a loan from the Plan.

The Debtor's employment with Intel was terminated on January 17, 1986 as a result of a substantial lay-off of employees by Intel. He filed bankruptcy on January 31, 1986. Shortly thereafter the Debtor became entitled to a lump sum distribution of the funds in his Plan account. Under Plan Section 10(d) distribution was to be made as soon as reasonably practicable after January 31st. (Section 10(d) requires distribu-

tion as soon as reasonably practicable after the valuation date next following the participant's termination date. Valuation date is defined in Section 20(uu) as "the last business day of each month and such other days as may be determined by the Company." Since the Debtor was terminated on January 17th, the valuation date was January 31st.) In fact, the Debtor did not receive a distribution until June, 1986. At that time he received the sum of $8,199.18, of which only $7,923.13 is at issue here.[3]

## LEGAL ANALYSIS

### *The Debtor's Interest in the Plan is Not Property of the Estate.*

A. The Pension/Profit Sharing Plan is not property of the estate if it constitutes a trust containing a spendthrift provision enforceable under state law.

Under § 541(a)(1)[4], all property in which a debtor has a legal or equitable interest at the time of the commencement of the bankruptcy case comes into the bankruptcy estate. One exception to the broad sweep of § 541(a) is found in § 541(c)(2). Section 541(c)(2) preserves restrictions on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law. The extent of the exclusion[5] afforded by § 541(c)(2) to ERISA plans containing non-alienability, non-assignment clauses has been the subject of several recent appellate cases.[6] *In*

called "free stock" is not at issue in this proceeding.

3. The sum of $276.05 is attributable to the Debtor's interest in Intel stock. *See* note two *supra.*

4. All statutory references in this opinion are to the Bankruptcy Reform Act of 1978, 11 U.S.C. sections 101 *et seq.,* unless otherwise indicated.

5. While it is less than clear from the wording of § 541(c) whether property that falls within § 541(c)(2) is excluded from the estate, or merely cannot be reached by the bankruptcy trustee, the cases cited in this opinion all speak of § 541(c)(2) as creating an exclusion from the bankruptcy estate. As it makes no practical difference in this case which interpretation is correct, this opinion will also refer to § 541(c)(2) as creating an exclusion.

6. The legal analysis employed by the appellate courts, and hence by this court, in approaching the issue of whether qualified ERISA pension plan assets are available for distribution to creditors, entails a two tier framework. The first tier involves the issue of whether § 541(c)(2) creates a per se exclusion for qualified ERISA plans. If the court decides it does not, then it must determine whether qualified ERISA plans can ever be excluded under § 541(c)(2).

If the court concludes that the pension is included in the property of the estate, the next tier of analysis involves the exemption issue. Section 522(b) of the Code is structured to give the debtor an election to exempt assets either under the special bankruptcy exemptions provided by § 522(d), or under state law. Some states have opted out of the federal exemption scheme and their residents must use state ex-

*re Daniel,* 771 F.2d 1352 (9th Cir.1985) *cert. denied,* — U.S. ——, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Graham,* 726 F.2d 1268 (8th Cir.1984); and *In re Goff,* 706 F.2d 574 (5th Cir.1983). Although the reasoning of these cases differ in significant aspects, they are unanimous in their conclusion that § 541(c)(2) does not create an automatic exclusion for qualified ERISA plans by virtue of their anti-alienation and anti-assignment clauses. The unanimity in the circuits breaks down when the courts move past this conclusion and consider whether ERISA plans can ever be excluded from the estate by virtue of § 541(c)(2).

In *In re Goff,* 706 F.2d 574, the Fifth Circuit turned to the legislative history of § 541(c)(2) and decided that despite its seemingly broad reference to "applicable non-bankruptcy law", Congress intended by that section "to exempt from the estate only those 'spendthrift trusts' traditionally beyond the reach of creditors under state law." 706 F.2d at 582. The court went on to hold that ERISA pensions could be excluded under § 541(c)(2), but only if they meet the requirements of state spendthrift law. 706 F.2d at 586. The debtor's interest in the Keogh plan at issue in *Goff* was found to be a part of the estate because the spendthrift clause was not enforceable under state law.[7]

In *In re Lichstrahl,* 750 F.2d 1488, the Eleventh Circuit using the reasoning and method of *Goff,* also found that an ERISA qualified pension plan was not excluded from the estate by virtue of § 541(c)(2) because it did not contain a spendthrift clause enforceable under state law.

In *In re Graham,* 726 F.2d 1268, the Eighth Circuit, while quoting the holding of *Goff,* arrived at a conclusion different from that reached in *Goff* and *Lichstrahl.* In *Graham* the court placed great weight on the fact that the federal exemption scheme found in § 522(d) includes an exemption for pension plans. The court reasoned that the inclusion of an exemption for pensions indicated that pensions were intended to be part of the estate.[8] The court decided: "[t]he question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out." 726 F.2d at 1272–73. The Court did not consider whether the pension was a valid spendthrift trust under state law, but went straight to the exemption issue.

*Graham,* while not explicitly stating, appears to hold that ERISA plans are never excluded from the estate by § 541(c)(2). This conclusion is supported by the bankruptcy court opinion in *In re Flygstad,* 56 B.R. 884 (Bankr.N.D.Iowa 1986). In that case, the same court which wrote the original *Graham* opinion noted the difference between its treatment of the ERISA plan (using a spendthrift clause analysis), and

---

emptions. Section 522(b)(1). Those debtors using the state exemptions are also entitled to use exemptions which may be available under federal law other than § 522(d). Section 522(b)(2)(A). Thus, under the second tier of analysis, the courts must decide if the pension is exempt under § 522(d)(10)(E), or if the debtor so chooses or state law requires, under a state law exemption. If the state law exemption is used, the court must also determine if the pension is exempt under the "other federal law" exemption.

7. The court found the Keogh plan at issue in *Goff* to be essentially a self-settled spendthrift trust. In holding that the spendthrift clause was not enforceable under state law, the court applied the general rule "that if a settlor creates a trust for his own benefit and inserts a 'spend-

thrift' clause, restraining alienation or assignment, it is void as far as creditors are concerned and they can reach the settlor's interest in the trust." 706 F.2d at 587.

8. This reasoning, that the provision of an exemption for pension plans indicates that Congress intended pension plans to be included in the bankruptcy estate, was previously voiced in a decision by the Court of Appeals for the Second Circuit, *Regan v. Ross,* 691 F.2d 81 (2nd Cir.1982). That case is not discussed in this opinion because it presents issues which are factually distinct from those at hand. *Compare McLean v. Central States Pension Fund,* 762 F.2d 1204 (4th Cir.1985) (rejecting the *Graham* reasoning on facts identical to those in *Regan v. Ross*).

the treatment rendered by the Circuit court. The bankruptcy court concluded that under *Graham*, "it is unnecessary to examine the provisions of the pension plan to determine whether it might be excluded from the estate as a valid spendthrift trust. The sole remaining issue is whether the debtor's interest may be exempted." 56 B.R. at 887.

In *In re Daniel*, 771 F.2d 1352, the Ninth Circuit Court of Appeals discussed the three prior circuit court decisions and agreed with the premise of all of them, i.e. that ERISA plans are not per se excluded from the estate by the provisions of § 541(c)(2).[9] Although not precisely articulated, the § 541(c)(2) issue raised on appeal in *Daniel* appears to be the narrow issue of whether § 541(c)(2) creates a per se exclusion for qualified pension plans.[10] The court answered this issue, but did not address the issue of whether ERISA plans can ever be excluded under § 541(c)(2) as that issue was not before the court. Thus, *Daniel* does not resolve for the courts in this circuit the pivotal issue in *Goff* and *Graham*.

For several reasons, this court will follow the *Goff* analysis holding that a pension plan constituting a spendthrift trust enforceable under state law is not property of the estate. First, in *Goff*, the trustee advanced the reasoning adopted in *Graham* and the court fully analyzed the problems with the *Graham* approach. 706 F.2d at 587. The court rejected the trustee's argument, stating that its interpretation of § 541(c)(2) does not relegate the § 522(d)(10)(E) exemption to surplusage be-

cause that exemption covers a broad array of employment benefits as well as pension plans, and provides an exemption for both qualified and unqualified pension plans. There will be instances where ERISA plans will be included in the estate because they do not qualify as enforceable spendthrift trusts under state law, either because that state does not enforce spendthrift provisions or because the provision is invalid. In those instances, in states which allow their citizens to use the federal exemptions, § 522(d)(10)(E) will be utilized to exempt pension assets despite use of the *Goff* rationale. The *Goff* rationale does not make a nullity of any portion of the federal exemption scheme.

Second, the *Goff* analysis gives greater meaning to the words used in the statute. Section 541(c)(2) treats as valid a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." *Graham* holds in effect, that this exclusion has no force when an ERISA plan is involved. This court can see no reason to read a section out of the Code if there is a reasonable way to apply it that is consistent with the purposes of the Code.

Finally, while *Daniel* does not directly address this issue, the opinion contains a lengthy quote from the *Lichstrahl* decision which ends with the following statement: "Therefore, ERISA qualifying pension plans containing anti-alienation provisions are excluded pursuant to section 541(c)(2) only if they are enforceable under state law as spendthrift trusts." 771 F.2d at 1360, quoting 750 F.2d at 1489–90. It

9. *Daniel* involved a pension and profit sharing plan which allowed the debtor to withdraw his beneficial interest virtually at his whim. The debtor controlled the amount and timing of contributions to the pension plan, and a large deposit was made on the eve of bankruptcy. The court held that the pension plan was not exempt under California law, and that ERISA plans are not exempt under the "other federal law" exemption of § 522(b)(2)(A).

10. The issue addressed in *Daniel* can be ascertained by looking to the cases which the court cites in footnote 15, and by the court's handling of the 541(c)(2) issue. Footnote 15 p. 1359,

contains a list of cases cited by the debtor to the Court of Appeals to prove its argument that the pension plan was not property of the estate. These cases, headed by *In re Threewitt*, 24 B.R. 927 (D.Kan.1982), all can fairly be said to stand for the proposition that ERISA plans are per se excluded from the estate by § 541(c)(2). It is also significant that the Ninth Circuit did not apply state spendthrift trust law to the *Daniel* trust. The most plausible explanation for this omission is that *Daniel* was written to decide only the basic "per se" exclusion issue raised under § 541(c)(2), and not the secondary issues raised by *Goff* and *Graham*.

would have been easy for the authors of the *Daniel* opinion to delete that statement if they disagreed with it. While this court is not bound by such dictum, it does signify that the Ninth Circuit at least has no immediate objection to the content of that statement.

B. The Plan is a trust containing a spendthrift clause enforceable under Oregon law.

This court must now determine whether the debtor's interest in the Plan is subject to a spendthrift provision enforceable under Oregon law. If it is, then the Debtor's interest in the Plan is not included in the property of the estate. If it is not, then the court must decide if the Debtor's interest is exempt under ORS 23.170.

Oregon has long recognized the validity of spendthrift trusts. *Shelly v. Shelly*, 223 Or. 328, 354 P.2d 282 (1960); *Mattison v. Mattison*, 53 Or. 254, 100 P. 4 (1909). But that recognition is not without restrictions; when the Oregon courts determine that the enforcement of spendthrift provisions is contrary to public policy, they decline to enforce the spendthrift provisions. See *Shelly v. Shelly*, 354 P.2d 282. (Beneficiary's interest in a spendthrift is subject to claims of his divorced wife for alimony and to claims for support of his children.) The Oregon courts also follow the general rule that if a settlor creates a trust for his own benefit and inserts a "spendthrift" clause, restraining alienation or assignment, it is void as far as creditors are concerned and they can reach the settlor's interest in the trust. *Johnson v. Commercial Bank*, 284 Or. 675, 588 P.2d 1096 (1978).[11]

Courts will generally examine spendthrift trusts to determine the extent of dominion and control a beneficiary possesses over the trust corpus. *In re Berndt*, 34 B.R. 515 (Bankr.N.D.Ind.1983). They seek to ensure that "although an individual can

set up a trust to provide for the welfare of another, he cannot control his assets to defraud his creditors." *In re Matteson*, 58 B.R. 909, 911 (Bankr.D.Colo.1986).

The Debtor's interest in the Plan at bar is a result of contributions made by his employer. The Debtor did not use his own assets, or assets over which he had control, to fund the Plan. "In analyzing the effectiveness in bankruptcy of spendthrift provisions in pension plans, the courts have generally concluded that those contained in employer created plans were effective, similar provisions in self settled plans were not." *In re Goff*, 706 F.2d at 589. The Debtor had very limited access to funds in the Plan. He could not withdraw the funds before his 60th birthday unless he became disabled, was terminated, or died. The provision allowing participants to borrow on their accounts in theory allowed the Debtor access to the trust funds prior to distribution, but the Debtor never used that provision. One can only speculate as to whether the Plan trustees would have granted the Debtor a loan if he had requested one. The existence of a provision allowing the beneficiary to receive loans from the trust has been held not to invalidate the spendthrift clause. *Danning v. Lederer*, 232 F.2d 610, 614 (7th Cir.1956). In that case the court held that the power to make loans to the beneficiaries from the trust was nothing more than a broadening of the trustees' power to invest the trust fund. This court need not reach the question of whether the existence of the right of the beneficiary to borrow from a trust will ever constitute the type of control by a beneficiary which will invalidate a spendthrift provision. In this case, it is sufficient that the Debtor did not exercise dominion over the trust funds in a manner inconsistent with the purpose of the spendthrift trust and the Debtor, the settlor, and the trustee

---

**11.** Although the holding in *Johnson* was based on a statute, former ORS 95.060, which stated that self-settled trusts are void as to creditors of the settlor, which was repealed in 1985, the court also cited the common law of trusts for that proposition. 588 P.2d at 1099. This court believes that the law as stated in *Johnson* is still valid in Oregon despite the failure of the legislature to recodify ORS 95.060 in 1985. That rule conforms to the one adopted in virtually all jurisdictions which recognize the validity of spendthrift trusts. Bogert, Trusts and Trustees, (2d Ed.1979) section 223.

are clearly separate persons. Thus, the court finds that the spendthrift provisions of the Plan meet the requirements of § 541(c)(2) and the Debtor's interest in the Plan is not a part of the bankruptcy estate.[12]

In reaching this conclusion the court is not unmindful of the prior decisions from this district, *In re Mace*, 4 B.C.D. 94 (Bankr.D.Or.1978), and *In re Mendenhall*, 4 B.R. 127 (Bankr.D.Or.1980), which found that the debtors' interest in tax qualified retirement plans were property of the estate. Both of these cases were brought under the old Bankruptcy Act of 1898, and insofar as they deal with the Act definition of "property of the estate" they are no longer applicable. The Bankruptcy Code substantially changed the definition of property of the estate and obviated the complex analysis used to determine the estate under the Act. *In re Goff*, 706 F.2d at 578; *In re Clark*, 711 F.2d 21, 23 n. 2 (3rd Cir.1983) (citing *Mendenhall*). Thus, the holding of *Mace* and *Mendenhall* are no longer authoritative on the property of the estate issue.

The trustee also cites *Mendenhall* for the proposition that the clause in the Plan restricting the alienation of the trust is not a spendthrift clause. This court agrees that *Mendenhall* does state that a very similar clause in the retirement plan under consideration in that case is not a spendthrift clause. 4 B.R. at 131. The opinion offers no explanation for that conclusion,

and this court can only speculate as to the basis of the conclusion. A spendthrift trust has been described as, "[a] trust in which by the terms of the trust a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed...." *Cogswell v. Cogswell*, 178 Or. 417, 167 P.2d 324, 335 (1946). The restrictions appearing in section 11(a) of the Plan meet that definition. Without some explanation for the conclusion reached in *Mendenhall* and given the factual distinctions between this case and that one,[13] this court does not feel constrained to follow the conclusory statement contained in *Mendenhall*. The restriction appearing in section 11(a) of the Plan is a spendthrift clause, and that clause is valid under Oregon law.

■ Even if the Debtor's interest in the Plan was not excluded from the estate by § 541(c)(2), the Court would find that the Debtor's interest in the Plan is exempt under ORS 23.170. Two tests have been established by the courts to determine whether a specific plan falls within the ORS 23.170 exemption. First, the person granting the trust must be different from the person granted the trust. *In re Mace*, 4 B.C.D. at 95. Secondly, the debtor may not exercise such control over the assets of the pension as to make it more like a conventional savings account and less like a true retirement fund. *In re Ott* (Civ. No. 86–187FR D.Or.1986). The Plan at bar

---

**12.** Whether an asset is property of the estate is determined by examining the nature of the asset on the date the debtor files bankruptcy. § 541(a). On the date of filing, the debtor had a vested interest in the Plan, but the funds were not yet available for distribution. Section 3(e) of the Plan states that a participant's participation in the Plan "shall terminate as of the earlier of (i) the date on which such Participant's entire Plan Benefit has been distributed or (ii) the date of such Participant's death." Even though the Debtor's termination pre-petition triggered his right to receive a distribution, the funds remained subject to the spendthrift provisions up to the point of the actual distribution. Section 541(a)(5) provides that certain types of property which the debtor acquires post-petition become property of the estate. Conspicuous by its absence from § 541(a)(5) is the debtor's rights to property which is no long-

er, but was at the time of filing, subject to an enforceable spendthrift clause. If Congress intended lump sum distributions under pension plans to become part of the estate if received shortly after filing, it would have so provided. The fact the debtor had a right to distribution shortly after filing therefore is irrelevant to determining whether the debtor's interest is excluded from the property of the estate.

**13.** The bankrupt in the *Mendenhall* case was both the settlor and the beneficiary of the Keough plan. As such he could not create a spendthrift clause effective against his creditors. When read in context, the language in the *Mendenhall* case seems to refer to a lack of an effective spendthrift clause, rather than the lack of a spendthrift clause.

meets both of these requirements. The Court does not find it significant that the pension in this case is funded through a profit sharing plan, instead of being a traditional defined benefit pension. The method by which an employer chooses to fund its pension should not determine the debtor's exemption rights. This is particularly true where there is no other retirement plan provided by the employer, as appears to be the instance in this case.

The trustee's objection will be overruled. The Debtor may keep the $7,923.13 in proceeds from his Plan account free from the claims of his bankruptcy trustee.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law, and pursuant to Bankruptcy Rule 7052, they will not be separately stated.