KILKENNY, Circuit Judge:
 

 Peter W. Hebert, M.D. and Patricia A. Hebert appeal from a judgment of the district court affirming a bankruptcy court order disallowing a claimed exemption in bankruptcy. We affirm.
 

 FACTS AND PROCEEDINGS BELOW
 

 Dr. Peter Hebert, a self-employed physician, established a Keogh pension plan in 1974. In 1984 Hebert filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. He claimed an exemption in his Keogh plan under section 23.170 of the Oregon Revised Statutes (ORS), made applicable by 11 U.S.C. § 522(b)(2)(A). The trustee in bankruptcy filed an objection to the claimed exemption, contending that Keogh plans do not fall within the purview of ORS 23.170. On May 15,1985, the bankruptcy court entered an order sustaining the trustee’s objection, disallowing the claimed exemption, and ordering that the balance of the Keogh account be turned over to the trustee.
 

 Hebert appealed the bankruptcy court decision to the district court, which affirmed on November 26, 1985. Hebert timely appeals.
 

 ISSUE
 

 Did the district court err in holding that funds contributed to a Keogh pension plan are not exempt from the claims of creditors under ORS 23.170?
 

 STANDARD OF REVIEW
 

 District court interpretations of state law are reviewed de novo.
 
 Jackson Water Works v. Public Utils. Comm’n,
 
 793 F.2d 1090, 1092 (CA9 1986);
 
 Matter of McLinn,
 
 739 F.2d 1395, 1397 (CA9 1984) (in banc).
 

 DISCUSSION
 

 The sole issue in this case is whether the Oregon exemption statute, ORS 23.-170, applies to Keogh plans. The statute provides an exemption for “pensions granted to any person in recognition by reason of a period of employment by or service for ... any ... person, partnership, association or corporation.”
 
 [1]
 

 The Oregon courts have not addressed this issue. Several federal decisions, however, have interpreted the Oregon statute. The first of these cases,
 
 In re Mace,
 
 4 B.C.D. 94 (Bankr.D.Or.1978), involved the applicability of ORS 23.170 to an individual retirement account (IRA). The court denied an exemption, concluding that “ORS 23.170 does not exempt a ‘pension’ established by a person for his own benefit.”
 
 Id.
 
 at 95. The court specifically required that “the ‘person’ granted the pension must be different from the ‘person’ granting the pension.”
 
 Id.
 
 This requirement was relied on in
 
 In re Mendenhall,
 
 4 B.R. 127, 131 (Bankr.D.Or.1980), which held ORS 23.170 inapplicable to self-funded Keogh plans, the precise issue presented here.
 

 Two recent cases have reaffirmed this statutory interpretation. In
 
 In re Ott,
 
 69 B.R. 1 (D.Or.1986), the court denied an exemption under ORS 23.170 for a pension and profit sharing plan established by the professional corporation David H. Ott, D.C., P.C., where Dr. Ott was the sole stockholder of the corporation and trustee of the plan. The court focused on “the amount of control exercised by the [d]ebtor” over the plan.
 
 Id.
 
 at 2. Finding that the debtor personally controlled the plan,
 
 *1001
 
 the court concluded that there was not a sufficiently distinct employer-employee relationship to qualify for an exemption under ORS 23.170.
 
 Id.
 

 In
 
 In re West,
 
 64 B.R. 738 (Bankr.D.Or. 1986), the debtor claimed an exemption for a profit-sharing retirement plan established by the corporation for which he worked. All of the contributions to the plan were made by the employer, and the debtor exercised no control over the funds.
 
 Id.
 
 at 739-40. The court held that the funds in this account were exempt under ORS 23.-170. Distinguishing
 
 Mace, Mendenhall,
 
 and
 
 Ott,
 
 the court stated:
 

 Two tests have been established by the courts to determine whether a specific plan falls within the ORS 23.170 exemption. First, the person granting the trust must be different from the person granted the trust. Secondly, the debtor may not exercise such control over the assets of the pension as to make it more like a conventional savings account and less like a true retirement fund.
 

 Id.
 
 at 744 (citing
 
 Mace
 
 and
 
 Ott).
 

 It has thus been a well-established rule of law in Oregon for nearly ten years that ORS 23.170 requires the existence of separate and distinct employer and employee entities. This construction reasonably follows from the language of the statute, which refers to pensions “granted to” a person “in recognition ... of a period of employment by or service for” an employer. The ordinary meaning of that language suggests two separate entities.
 

 We also find persuasive the fact that the Oregon legislature, while amending ORS 23.170 in both 1979 and 1985,
 
 [2]
 
 did not choose to amend the statute to clearly include self-funded pension plans. This is particularly significant in light of the precedent already established by
 
 Mace
 
 and
 
 Mendenhall. See, e.g., Director, Office of Workers’ Compensation Programs v. Perini N. River Assocs.,
 
 459 U.S. 297, 319-20, 103 S.Ct. 634, 648, 74 L.Ed.2d 465 (1983) (entitled to presume legislators know the law” and intend meaning of statute to be consistent with prior judicial construction);
 
 North Haven Bd. of Educ. v. Bell,
 
 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982) (where legislature is aware of prior statutory construction and has not sought to alter that interpretation despite amending statute in other respects, prior construction may be presumed correct).
 

 Hebert relies primarily on policy arguments, asserting that self-employed individuals should be placed on the same footing as those whose pensions are funded by separate employers. That argument, however, ignores the very real differences between Keogh plans and employer-granted pension plans. The latter are funded and controlled by the employer, and carry with them well-defined, employer-determined guidelines on when an employee’s interest in the funds vests and when such funds may be withdrawn. Keogh plans, on the other hand, are funded exclusively by the self-employed individual, who retains complete control over the amounts invested and the management of the funds. This individual also retains the right to terminate the plan and withdraw the funds at any time, subject only to a tax penalty.
 
 [3]
 

 Moreover, the majority of courts that have addressed the policy issues have concluded that the benefits to be derived from granting an exemption for self-funded plans are outweighed by the “strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors.”
 
 Matter of Witlin,
 
 640 F.2d 661 663 (CA5 1981);
 
 see also Matter of Goff,
 
 706 F.2d 574, 588 (CA5 1983);
 
 In re Goldberg,
 
 59 B.R. 201, 206 (Bankr.N.D. Okla.1986);
 
 Matter of Sawdy,
 
 49 B.R. 383, 385-86 (Bankr.W.D.Pa.1985).
 
 But see In re Diaz,
 
 50 B.R. 22 (Bankr.E.D.Va.1985).
 

 
 *1002
 
 Whatever the policy considerations, the issue is still governed by the Oregon statute. Unfortunately, the legislative history behind ORS 23.170 is sparse. Hebert states in his brief that the issue presented in this case “was discussed in some detail” before a legislative subcommittee overseeing the 1979 amendment. A review of the legislative materials, however, indicates that Hebert over-states his case. The 1979 amendment dealt with an exception to the exemption scheme for claims arising out of support obligations, and the bulk of the legislative discussion focused on that issue. Summaries of the legislative hearings indicate that Keogh plans were mentioned briefly at one meeting, but that the only legislator to mention Keogh plans apparently viewed such plans as “really not pensions” and suggested that he did not believe Keogh plans were subject to the state statute.
 

 • There is nothing else in the legislative history to suggest that the Oregon legislature addressed the issue presented in this case.
 
 [4]
 
 In the absence of legislative history to the contrary, and in light of well-established Oregon law for the past nine years, we adopt the common sense construction placed on ORS 23.170 by the lower courts and hold that the statute does not exempt Keogh plans.
 

 CONCLUSION
 

 The judgment of the district court is AFFIRMED.
 

 APPENDIX A
 

 23.170 Pensions exempted without necessity for claim; exception for certain orders. All pensions granted to any person in recognition by reason of a period of employment by or service for the government of the United States, or any state, or political subdivision of any state, or any municipality, person, partnership, association or corporation, shall be exempt from execution and all other process, mesne or final, except executions or other process arising out of a support obligation or an order or notice entered or issued pursuant to ORS 25.050, 25.060, 25.310, 25.350, 25.-360, 416.445 or 419.515. Such exemption shall be effective without necessity of claim thereof by the pensioner. [Amended by 1979 c. 85 § 1; 1985 c. 671 § 1]
 

 [1]
 

 . The full text of the statute is set out in Appendix A.
 

 [2]
 

 . Both amendments dealt with an exception to the exemption scheme for claims arising out of support obligations.
 

 [3]
 

 . Those courts that have addressed the issue generally have not regarded the tax penalty as a significant restraint.
 
 See, e.g., Matter of Goff,
 
 706 F.2d 574, 589 (CA5 1983);
 
 In re Goldberg,
 
 59 B.R. 201, 207 (Bankr.N.D.Okla. 1986).
 

 [4]
 

 . Hebert states that a follow-up letter from Assistant Attorney General Young to the subcommittee makes it "clear ... that the committee understood that ORS 23.170 was intended to apply to Keogh pension plans.” This is hardly the case. Mr. Young's letter again makes clear that the focus of the legislative discussion was on a proposed exception to the exemption scheme for support obligations. While Mr. Young may have assumed ORS 23.170 applied generally to all pension plans, neither he nor the subcommittee squarely addressed the underlying issue in this case — that is, the applicability of ORS 23.170 to self-funded Keogh plans vis-a-vis other types of pension plans. Moreover, it is the
 
 legislative
 
 intent which is relevant, and Mr. Young’s letter does little to establish that intent.