**In re James Michael WEST, Nancy Lee West, Debtors.**

**John MITCHELL, Trustee, Plaintiff–Appellant,**

v.

**James M. WEST, Nancy L. West, Defendants–Appellees.**

**BAP No. OR 86–1970 JMeAs.**

**Bankruptcy No. 386–000456.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted May 14, 1987.

Decided Oct. 8, 1987.

Mary E. Egan, Ransom, Blackman & Simson, Portland, Or., for plaintiff-appellant.

Steven Scroggin, Scroggin & Mason, Beaverson, Or., for debtors/defendants-appellees.

Before JONES, MEYERS and ASHLAND, Bankruptcy Judges.

## OPINION

### FACTS

The debtor, James M. West ("West"), was employed by Intel Corporation until January 17, 1986. As an Intel employee, West was an automatic participant in the Intel Profit–Sharing Retirement Plan

("Plan"). The Plan is an ERISA qualified plan and contains the following language:

Section 11(a) *No Assignment of Property Rights*.... [T]he interest or property rights of any person in the Plan, in the Trust Fund or in any payment to be made under the Plan shall not be optioned, anticipated, assigned (either in law or in equity), alienated or made subject to attachment, garnishment, execution, levy, other legal or equitable process or bankruptcy, and any act in violation of this Section 11(a) shall be void. The restriction of this Section 11(a) shall not apply to the creation, assignment, or recognition of a right to any benefit payable under the Plan with respect to a Participant pursuant to a qualified domestic relations order, as defined in the Code.

The Plan is funded by three types of contributions: salary deferrals, voluntary employee contributions and Intel contributions. Because West did not make any contribution to the Plan, his entire interest in the Plan is a result of employer contributions. As one of several thousand Intel employees, West had no interest in the corporation other than ownership of 10.-6175 shares of stock acquired through Intel's Sheltered Employee Retirement Plan. The stock is not at issue on appeal. West was neither an officer nor a director of Intel, and was not a trustee or in control of a trustee of the trust fund.

An employee may not withdraw employer contributions to the Plan until the employee reaches age 60, dies, becomes disabled, or terminates employment at Intel. The Plan does contain a provision allowing participants to borrow from their vested employer contribution account. The loans are restricted in amount, are interest bearing and require repayment within five years of origination, ten years if the loan is used to acquire, construct, reconstruct or substantially rehabilitate the participant's home. West never obtained a loan from the Plan.

West's employment with Intel was terminated on January 17, 1986 as a result of a substantial lay-off of employees. He filed bankruptcy on January 31, 1986. Shortly thereafter, West became entitled to a lump sum distribution of the funds in his Plan account. Under Plan section 10(d), distribution was to be made as soon as reasonably practicable after January 31st.[1] West, however, did not receive a distribution until June, 1986 when he received $8,199.18, most of which is at issue here.

West sought to exempt his interest in the Plan from the bankruptcy estate and the trustee objected. After a hearing, the court issued a memorandum decision and order, *In re West,* 64 B.R. 738 (Bankr.D.Or. 1986). The court concluded that the anti-alienation provision in section 11(a) of the Plan qualified it as a valid spendthrift trust under state law and that therefore West's interest in the Plan was not an asset of the estate pursuant to Bankruptcy Code section 541(a)(2). *Id.* at 740–43. Alternatively, the court concluded that the Plan was an exempt asset pursuant to Bankruptcy Code section 522(b)(2)(A) because it qualified as a pension under state law. Or.Rev. Stat. section 23.170. *Id.* at 743–45. The trustee appealed.

## ISSUES

1. Whether West's interest in the Intel Plan is an asset of the bankruptcy estate under Bankruptcy Code section 541.

2. Whether West's interest in the Intel Plan is exempt as a "pension" under Or. Rev.Stat. section 23.170.

## DISCUSSION

1. *Exclusion from the estate*

▮ Under Bankruptcy Code section 541(a)(1), all property in which the debtor has a legal or equitable interest is included in the bankruptcy estate. Section 541(c)(2), however, excludes from the estate property in which a "restriction on the transfer of a beneficial interest of the debtor in a trust

---

1. Section 10(d) requires distribution as soon as reasonably practicable after the valuation date next following the participant's termination date. "Valuation date" is defined in section 20(uu) as "the last business day of each month and such other days as may be determined by the company." Since West was terminated on January 17, 1986, the valuation date was January 31.

that is enforceable under applicable non-bankruptcy law...." After a thorough analysis, the trial court properly concluded that section 541(c)(2)'s exclusion applies only to property that qualified as a valid spendthrift trust under state law. 64 B.R. at 740–43. On appeal, neither party disputes this interpretation of section 541(c)(2).

Generally, a spendthrift trust may not be self-settled. *See Johnson v. Commercial Bank*, 284 Or. 675, 588 P.2d 1096 (1978); *Nelson v. California Trust Co.*, 33 Cal.2d 501, 202 P.2d 1021 (1949); Bogert, *Trusts and Trustees*, 2d ed. section 223. In addition, the beneficiary must not be able to alienate his interest in the trust and must not possess exclusive and effective control over termination or distribution. In cases where pension plans have been included in bankruptcy estates, the distinction between the corporation and the beneficiary has been questionable. *See, e.g., In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985) (debtor was sole director, officer, shareholder and employee of professional corporation); *In re Goff*, 706 F.2d 574 (5th Cir. 1983) (Keough plan); *In re Shuman*, 78 B.R. 254 (9th Cir.BAP 1987), (debtor was sole officer and shareholder of corporation and a trustee of pension plan); *In re Ott*, 53 B.R. 388 (Bankr.D.Or.1985) (debtor was sole corporate shareholder); *In re Mendenhall*, 4 B.R. 127 (Bankr.D.Or.1980) (Keough plan); *Mace*, 4 B.C.D. 94 (Individual Retirement Account). In the case at bar, West neither settled the trust nor put his own money into it. Nevertheless, the trustee argues that the Plan is not a valid spendthrift trust because West had too much control over the Plan assets. The trustee asserts that West (1) could borrow money against the Plan, (2) could take distribution from the Plan upon termination, and (3), as a result of being laid off, received accelerated vesting.

■ First, that the beneficiary *may* borrow from the trust does not necessarily invalidate a spendthrift clause. *See Danning v. Lederer*, 232 F.2d 610, 614 (7th Cir.1956). Here, West had never borrowed money from the Plan and, if he sought to do so, the trustees of the Plan were not obligated to make the loan. Moreover, the

trustee does not suggest that the repayment requirements were anything but legitimate. Therefore, that West could have requested a loan from the Plan by itself, does not prevent the Plan from being considered a spendthrift trust.

■ Second, it is unclear whether the ability to take distribution upon termination of employment defeats a plan's status as a spendthrift trust. Some courts hold that such a provision results in the trust not having the safeguards of a "true" spendthrift trust. *See In re Sundeen*, 62 B.R. 619, 620 (Bankr.C.D.Ill.1986); *In re Werner*, 31 B.R. 418 (Bankr.D.Minn.1983). Other courts hold that the "ramifications of terminating one's employment are sufficiently self-defeating so as to discourage an abuse of the right to receive a payment." *In re Wiggins*, 60 B.R. 89, 95 (Bankr.N.D.Ohio 1986). *Accord In re Goff*, 706 F.2d at 589; *In re Matteson*, 58 B.R. 909, 911 (Bankr.D.Colo.1986). In the case at bar this consideration is irrelevant as West's employment had been terminated prepetition.

■ Third, when he filed bankruptcy, West had requested a distribution, but he was not immediately entitled to it and had not received it. The trustee argues that administrative rules for distributions under the Plan should not prevent the asset from coming into the estate. We note, however, a spendthrift provision is effective until distribution is made. *Smith v. Mirman*, 749 F.2d 181 (4th Cir.1984). Accordingly, we conclude that the trial court correctly held that the Intel Plan satisfies the requirements of a spendthrift trust. As a spendthrift trust, West's interest in the Plan was protected when he filed bankruptcy.

■ The final question is whether West's interest in the Plan should have come into the estate when it was distributed in June 1986. Bankruptcy Code section 541(a)(5) provides that certain property coming into the debtor's possession within 180 days after filing bankruptcy comes into the bankruptcy estate. The debtor's interest in property excluded under section 541(c)(2) is not listed in section 541(a)(5). The trial court concluded that, by this omis-

sion, Congress intended that such property not come into the estate. We agree. Had Congress intended to create an exception to section 541(c)(2)'s exclusion for postpetition pension distributions, it would have done so.[2]

### 2. *Exemption as a Pension*

■ Oregon has opted out of the federal exemption scheme. Or.Rev.Stat. section 23.305. Thus, if West's interest in the Plan is to be exempt under Bankruptcy Code section 522, 11 U.S.C. section 522, it must qualify as a "pension" under Or.Rev.Stat. section 23.170. That section provides in relevant part:

"[P]ensions granted to any person in recognition by reason of a period of employment by ... any ... person, partnership, association or corporation, shall be exempt from execution...."

■ The trial court concluded that the Intel Plan qualified as a pension under section 23.170 stating:

Two tests have been established by the courts to determine whether a specific plan falls within the ORS 23.170 exemption. First, the person granting the trust must be different from the person granted the trust. *In re Mace*, 4 B.C.D. at 95. Secondly, the debtor may not exercise such control over the assets of the pension as to make it more like a conventional savings account and less like a true retirement fund. *In re Ott* [69 B.R. 1] (Civ. No. 86–187FR D.Or.1986). The Plan at bar meets both of these requirements. The court does not find it significant that the pension in this case is funded through a profit sharing plan, instead of being a traditional defined benefit pension. The method by which an employer chooses to fund its pension should not determine the debtor's exemption rights. This is particularly true where there is no other retirement plan provided by the employer, as appears to be the instance in this case.

The Ninth Circuit Court of Appeals recently addressed this issue in *Hebert v.*

*Fliegel*, 813 F.2d 999 (9th Cir.1987). There, the court cited with approval the decision of the trial court in the instant case. *Id.* at 1001 (citing *In re West*, 64 B.R. at 744). The *Hebert* court then concluded:

It has thus been a well-established rule of law in Oregon for nearly ten years that ORS 23.170 requires the existence of separate and distinct employer and employee entities. This construction reasonably follows from the language of the statute, which refers to pensions "granted to" a person "in recognition ... of a period of employment by or service for" an employer. The ordinary meaning of that language suggests two separate entities.

813 F.2d at 1001. In our view, the trial court's analysis of this issue and its conclusion that the Plan constitutes a pension is correct. Accordingly, we AFFIRM.

---

**2.** Compare *In re Kragness*, 58 B.R. 939 (Bankr. D.Or.1986), where the trust at issue was held to be a testamentary spendthrift trust. Distributions made within six months after the filing date were not protected because they came within the bequest, devise or inheritance provision of section 541(a)(5)(A).