**In re Wayne FLYGSTAD dba Wayne's Farm Supply, Debtor.**

**Bankruptcy No. 83–03148.**

United States Bankruptcy Court,
N.D. Iowa.

Jan. 8, 1986.

Thomas C. Wynia, Story City, Iowa, for debtor.

Thomas T. Tarbox, Fort Dodge, Iowa, for trustee/objector.

FINDINGS OF FACT, MEMORANDUM AND ORDERS RE: TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS.

THOMAS WOOD, Bankruptcy Judge, Sitting by Designation.

This proceeding concerns the entitlement of the Debtor to claimed exemptions of his interest as an employee in a retirement fund and a profit sharing plan. The Trustee has filed objections to the exemptions claimed. Having reviewed the record and the briefs submitted, the Court now makes the following Findings of Fact and Conclusions of Law pursuant to F.R.B.P. 7052.

## FINDINGS OF FACT

1. The Debtor, Wayne Flygstad, filed a Petition for Relief under the Bankruptcy Code on October 24, 1983.

2. On the date of filing, Debtor was 54 years old. He had been employed by Moorman Manufacturing Company (the company) for at least 15 years and was so employed when his Petition was filed.

3. For the purposes of this proceeding, Debtor participated in three company plans: (1) the "pre-ERISA" retirement fund, (2) the ERISA retirement fund, and (3) the profit sharing plan.

4. The ERISA retirement fund and the profit sharing plan conform to the requirements of the Employees Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq.

5. The pre-ERISA retirement fund does not conform to ERISA requirements. Prior to April 14, 1974, the company required employees to contribute to the fund. Upon termination for any reason, the employee is entitled to withdraw his contribution to the fund in a lump sum. The record reveals that Debtor could withdraw $1,015.50 if he terminated his employment on the date of filing.

6. The company is the only contributor to the ERISA retirement fund. Benefits from this plan are calculated on the basis of salary and length of service and are payable only as monthly payments for life. On the date of filing, Debtor was eligible to receive payments of $420.00 per month commencing at age 65. Because he has 10 years of service with the company, Debtor can retire at age 55 with reduced, but unspecified, monthly payments.

7. The profit sharing plan is set up as a trust which is funded by the company based on a percentage of adjusted net profits determined by a board of directors. Employees have individual shares in the trust based upon salary and years of service. Debtor's share on date of filing was approximately $40,000.00. Due to his length of service, Debtor was fully "vested" and could have withdrawn his entire share on the date of filing if he had terminated his employment.

8. Upon attainment of age 55, and having had 10 years of service, Debtor would have no control over the disbursement of his share of the profit sharing plan in the event of his termination. The decision would lie exclusively with the administrative committee to pay the Debtor in a lump sum, in payments over a 120-day period, or in annual payments extending up to 10 years.

## MEMORANDUM

Wayne Flygstad filed for relief under Chapter 7 of the Bankruptcy Code on October 24, 1983. On that date, Flygstad was 54 years old and had been an employee of Moorman Manufacturing Company for over 15 years. He claims as exempt property his interest in a retirement fund and a profit sharing plan created by his employer. For purposes of this decision, the retirement fund has been divided into two parts, the pre-ERISA retirement fund and the ERISA retirement fund. Both the latter and the profit sharing plan meet the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. The pre-ERISA fund does not. The Trustee in Bankruptcy filed an objection to the claimed exemptions of the retirement fund (both parts) and the profit sharing plan.

This Court has previously considered whether ERISA-qualified interests are a part of the bankruptcy estate. *In re Graham*, 24 B.R. 305 (Bkrtcy.N.D.Ia.1982), *aff'd* 726 F.2d 1268 (8th Cir.1984). The analysis utilized in *Graham* is applicable to the present case and need only be summa-

rized here. In affirming *Graham*, the Eighth Circuit stressed the expansive nature of the estate created by § 541(a)(1) of the Bankruptcy Code.

> The scope of this paragraph [§ 541] is broad. It includes all kinds of property, including tangible and intangible property, causes of action ... and all other forms of property currently specified in § 70(a) of the Bankruptcy Act ... [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start.

*Graham*, 726 F.2d at 1270.

An exception to the all-encompassing nature of § 541(a) is provided in § 541(c)(2).

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable under this title.

The key term in § 541(c)(2) is "applicable nonbankruptcy law". ERISA qualified plans must contain anti-alienability and anti-assignability clauses pursuant to 29 U.S.C. § 1056(d)(1). In *Graham*, the debtor argued that the anti-alienation clause in his ERISA plan was enforceable against general creditors under nonbankruptcy law, and therefore was enforceable against the bankruptcy trustee. The Court rejected this argument.

> The change in the scope of property of the estate effectuated by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provisions of the Code, and the preemption of ERISA all convince us that Congress did not intend "applicable nonbankruptcy law" to include ERISA. Rather, Congress only intended by § 541(c)(2) to preserve the status [of] traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act.

*Graham*, 726 F.2d at 1271.

This holding that § 541(c)(2) applies only to traditional spendthrift trusts has been adopted by other circuit courts which have considered the issue. *See Matter of Goff*, 706 F.2d 574 (5th Cir.1983), *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985), *In*

re *Daniel*, 771 F.2d 1352, 1360 (9th Cir. 1985). *Contra, In re Pruitt*, 30 B.R. 330 (Bkrtcy.D.Colo.1983).

Having determined that § 541(c)(2) excepts only spendthrift trusts, this court in its earlier decision in *Graham*, 24 B.R. 305, 310, considered whether an ERISA plan qualified as a spendthrift trust. In *Graham*, the debtor was the sole shareholder, director, and officer of a professional corporation which had formed a pension and profit sharing trust under ERISA. The Debtor had a vested interest in the ERISA plan in the amount of $150,000.00 which he claimed was excluded from the bankruptcy estate as a spendthrift trust. The Court, citing *In re Klayer*, 20 B.R. 270 (Bkrtcy.W.D.Ky.1981), pierced the corporate veil and concluded that the debtor was, in fact, the settlor, trustee, and beneficiary of the ERISA trust. The ERISA trust was funded by profits made by the debtor. He could terminate his employment and vote to have the entire trust interest paid over to him.[1] On the basis of these facts, it was determined that the fund was not a spendthrift trust enforceable under nonbankruptcy law and thus did not fall within the exclusion of § 541(c)(2). The debtor's entire interest in the ERISA trust was included in the estate.

The Eighth Circuit, in affirming . *Graham*, apparently did not rely on this spendthrift analysis in reaching its decision.[2] Instead, noting that the majority of decisions have concluded that an ERISA plan is properly part of the bankruptcy estate, the Court stated a broad policy position.

There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the code's *exemption* [emphasis in the original] provision clearly indicating that they were intended and assumed to be part of the estate.

\*　　\*　　\*　　\*　　\*　　\*

We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start, they may then be exempted out. *In re Graham*, 726 F.2d at 1272.

The language chosen by the Eighth Circuit is clear. The broad sweep of § 541(a)(1) embraces pension plans. Once included in the bankruptcy estate, the debtor's rights in the pension plan may be exempted under § 522. By inference, the Court concluded that Congress would not have provided an exemption for pension funds under § 522 if they could be excluded from the estate as part of a spendthrift trust under § 541(c)(2). Therefore, it is unnecessary to examine the provisions of the pension plan to determine whether it might be excluded from the estate as a valid spendthrift trust. The sole remaining issue is whether the debtor's interest may be exempted.

Having determined that the Debtor's interests in the pre-ERISA[3] and ERISA retirement funds and in the profit sharing plan are part of the Bankruptcy estate, the Court must consider whether the Debtor's

---

**1.** Indeed the Debtor did terminate his employment on the date he filed his Petition in Bankruptcy. His Plan contained conflicting provisions in the event of termination. Under one provision payment of benefits were required to begin within 60 days of the end of the Plan year. Under the other provision, the debtor, as director of the corporation, had the discretion to pay out benefits or to withhold payment until age 65. The Court determined the Trustee had a present right to the payments under either provision. *In re Graham*, 24 B.R. at 312–313.

**2.** Other Bankruptcy Courts have excluded ERISA plans from the bankruptcy estate pursuant to § 541(c)(2) by applying a spendthrift analysis. *See In re Crenshaw*, 51 B.R. 554 (Bkrtcy.N.D.Alabama 1985), *Matter of Berndt*, 34 B.R. 515 (Bkrtcy.N.D.Indiana 1983), *DiPiazza v. Metropolitan Life Insurance Co.*, 29 B.R. 916 (Bkrtcy.W.D.Illinois 1983).

**3.** The pre-ERISA contributions may or may not be subject to the anti-alienability provisions of ERISA. In either case the pre-ERISA portion of the retirement fund is clearly part of the estate.

interests, or any part thereof, may be exempted under 11 U.S.C. § 522.

Section 522(b)(2)(A) of the Bankruptcy Code permits a debtor utilizing a state exemption system to also exempt "any property that is exempt under Federal law, other than subsection (d) of this section." The legislative history of section 522(b)(2)(A) provides a listing of property that can be exempted under other Federal laws. S.Rep. No. 989, 95th Cong., 2d Sess. 25, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5810, H.Rep. No. 595, 95th Cong., 2d Sess. 360 (1977), U.S.Code Cong. & Admin.News 1978, p. 6316. ERISA plans are not included. Recognizing this list was not exhaustive, the Court nevertheless interpreted the omission as an indication of Congressional intent not to include ERISA qualified plans among the exemptions allowed by § 522(b)(2)(A). *Graham*, 726 F.2d at 1274. The same result was reached in *Matter of Goff*, 706 F.2d 574, 585 (5th Cir.1983), in *In re Lichstrahl*, 750 F.2d 1488, 1491 (11th Cir.1985), and in *In re Daniel*, 771 F.2d 1352, 1359 (9th Cir.1985).

■ Pursuant to § 522(b)(1) and § 522(b)(2)(A), Iowa has "opted out" of the exemptions allowed in § 522(d). *See* § 627.10, Code of Iowa (1985). Thus any question of exemptions must be decided under Iowa law. The applicable Iowa statute is § 627.6(9)(e) which reads as follows:

A debtor who is a resident of this state may hold exempt from execution the following property:

9. The debtor's rights in:

e. a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The trustee interprets the statute as requiring a debtor's interest in a pension plan to be "in a payment mode". That is, a debtor must be actually receiving payments from the plan in order to claim an exemption. The trustee asserts that such a result obtains from the plain language of the statute. The Court reaches a different conclusion. Section 627.6(9)(e) allows an exemption for the debtor's "rights in a payment". To limit "rights in a payment" to current payments received is an unreasonably restrictive interpretation of the statute. The Court concurs in the decision of the District Court for the Southern District of Iowa where it recently held

The debtors have "rights in a payment" under the plan regardless of when the payment may be due. This is clearly contemplated by the very nature of the exemptions in Iowa Code § 627.6(9). An interest in future payments necessarily includes an interest in the present assets from which those payments will be made. The exemption therefore applies to all those assets in the fund, not just present payments due.

*In re Pettit*, 57 B.R. 362, 363 (Central Division, S.D.Iowa 1985), in affirming *Matter of Pettit*, 55 B.R. 394 (Bkrtcy.S.D.Iowa 1985).

■ The second argument offered by the Trustee in objecting to Debtor's claimed exemption in the Profit Sharing Plan[4] relates to the "on account of illness, disability, death, age or length of service" language of § 627.6(9)(e). The Trustee asserts that the issue is whether the "Plan," or "eligibility to participate" in the Plan, is determined on account of illness, disability, death, age, or length of service. More properly stated the issue is whether the Debtor's rights in a payment are on account of these enumerated factors. The terms of the Profit Sharing Plan provide that the debtor may receive payments from the Plan only upon his death, disability, or termination. The amount of Debtor's vested interest is determined by length of service, while the form of the payment is determined by a combination of age and length of service. Clearly, Debtor's rights to payment in the Profit Sharing Plan conform to the statutory requirement that

---

4. The Trustee does not object to Debtor's interest in the Retirement Funds on these grounds.

they be on account of illness, disability, death, age, or length of service, and thus are subject to exemption.

Finally, the Trustee contends that Debtor's rights in payments are not reasonably necessary for the support of the Debtor and any dependent of the Debtor. This Court considered the "reasonably necessary" standard in *In re Schwartz*, slip op. 82–03049, (Bkrtcy. N.D.Iowa 1984), where it determined that the Debtor's interest in an IRA was not reasonably necessary for the support of the Debtor, his wife and two children. In reaching that conclusion, the Court looked to § 6(B) of the Uniform Exemptions Act (UEA) and to the case of *In re Taff*, 10 B.R. 101 (Bkrtcy.D.Conn.1981). UEA § 6(B) defined reasonably necessary property as:

> Property required to meet present and anticipated needs of the debtor and his dependents as determined by the court after consideration of the debtor's responsibilities and all of the present and anticipated property and income of the debtor including that which is exempt.

Having reviewed UEA § 6(B), the *Taff* court concluded:

> ... the reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim.

*Taff*, 10 B.R. at 107.

■ A determination of whether a debtor's interest in a fund is reasonably necessary for support must be arrived at on a case by case basis. No two debtors present the same factual situation. Thus, a workable standard must be based on definite criteria, widely applicable to a variety of circumstances, and consistent with the purposes of the Bankruptcy Code and Iowa exemption law.

■ In *Matter of Hahn*, 5 B.R. 242, 244 (Bkrtcy.S.D.Iowa 1980), Judge Stageman enumerated five purposes for exemption laws:

1. to provide a debtor enough money to survive.

2. to protect his dignity and his cultural and religious identity.

3. to afford a means of financial rehabilitation.

4. to protect the family unit from impoverishment.

5. to spread the burden of the debtor's support from society to his creditors.

These purposes coincide with the Bankruptcy concept of a fresh start. Exemptions are not intended to encompass all contingencies so as to ".. insure that no future misfortunes could possibly lower the standard of living to which the debtor's dependents have become accustomed." *Matter of Kochell*, 26 B.R. 86, 87 (Bkrtcy.W.D.Wisc. 1982). The debtor should be permitted to retain the basic necessities of life so that he is not rendered destitute and a public charge. To this end, the Court will look to the Debtor's present and future needs as demonstrated by the particular circumstances of each case. In so holding, the Court expressly follows those cases which find that future needs may be examined in determining exemption issues. *See In re Miller*, 33 B.R. 549, 553 (Bkrtcy.D.Minn. 1983), *In re Pettit*, 55 B.R. 394 (Bkrtcy.S.D. Iowa 1985), *In re McKenna*, 58 B.R. 221 (Bkrtcy.N.D.Iowa 1985).

■ In considering whether a debtor's right to payment in a profit ˙ sharing or pension plan is reasonably necessary for support, the Court will look to many factors, among them the following:

(1) Debtor's present and anticipated living expenses; (2) Debtor's present and anticipated income from all sources; (3) Age of the debtor and dependents; (4) Health of the debtor and dependents; (5) Debtor's ability to work and earn a living; (6) Debtor's job skills, training, and education; (7) Debtor's other assets, including exempt as-

sets; (8) Liquidity of other assets; (9) Debtor's ability to save for retirement; (10) Special needs of the debtor and dependents; (11) Debtor's financial obligations, e.g., alimony or support payments.

In the case at bar, some evidence bearing on the above factors is lacking. The Debtor was 54 years old on the date of filing. He is able to work and is presently earning approximately $1,200 per month. The schedules filed with his Petition for Relief indicate other exempt assets of approximately $5,000. Mr. Flygstad's largest asset by far is his interest in the Profit Sharing Plan. Debtor's brief avers that he has no special training. He is married. There is no evidence as to present or anticipated expenses, dependents, special needs or obligations, or the ability to save for retirement.

■ Although the record is not complete, the evidence is sufficient for the Court to hold that both the pre-ERISA and ERISA qualified portions of the retirement fund are reasonably necessary for the support of the Debtor and his dependents and, therefore, are exempt under Iowa Code § 627.6(9)(e). Debtor's other assets are not substantial. If he retired on the date of filing, he would be eligible to receive monthly payments of approximately $420.00 when he reached age 65. The monthly payment will vary depending on how long Flygstad continues to work for the company and at what age he chooses to retire. The Court finds that a monthly payment of approximately $420.00, even when coupled with Social Security benefits to which Debtor is likely entitled, is within the contemplation of the reasonably necessary standard. Likewise, the Court finds Debtor's pre-ERISA contribution to the Retirement Fund of $1,015.50, which he can withdraw in a lump sum upon termination, is also reasonably necessary for support.

The Profit Sharing Plan provides a different problem.[5] Unlike the pension fund which requires monthly payments, the Profit Sharing Plan allows a lump-sum distribution of Debtor's $40,000.00 "vested" interest. On the date of filing, Flygstad could command the turnover of the entire amount if he terminated his employment.[6]

As discussed above, the degree of control exercisable by a Debtor has been raised often as an issue in determining whether a Plan is excludable from the bankruptcy estate under section 541(c)(2). Courts have included IRAs, (In re Schwartz, slip op. 82–03049, (Bkrtcy.N.D.Iowa 1984), Keough plans, Matter of Witlin, 640 F.2d 661, 663 (5th Cir.1981), and "self settled" ERISA plans, Graham, supra, 24 B.R. 305, aff'd 726 F.2d 1268, in the estate, because the Debtor had virtually unrestricted access to plan funds.

---

5. The Court is cognizant of the fact that a profit sharing plan is not specifically exempted under § 627.6(9)(e). In drafting this subsection, the Iowa legislature deleted the terms "profit sharing" and "stock bonus" from the language of 11 U.S.C. § 522(d)(10)(E) which served as a model for § 627.6(9)(e) and is otherwise identical in material part to it. The Trustee has not raised, nor does the Court decide, this issue in the present case. However, the Court notes that it is in fundamental agreement with the decision of the Bankruptcy Court for the Southern District of Iowa in Matter of Pettit, 55 B.R. 394 (Bkrtcy.S.D.Iowa 1985), affirmed In re Pettit, 57 B.R. 362 (C.D.S.D.Iowa 1985), where the Court found that profit sharing plans which exhibit the essential characteristics of a pension or annuity should be exempt as a "similar plan or contract," provided they meet the reasonably necessary standard.

6. If Debtor had reached age 55 on or before the date of filing, the form of payment would have been at the sole discretion of the Administrative Committee of the Plan. This could be significant depending on the criteria used by the Committee in determining whether the Plan member is paid in a lump sum or in 10 annual payments. For example, if the Plan member could effectuate a pay out of some or all of his vested interest simply by making a written request to the Committee, the Plan might be more accurately labelled a savings account rather than a pension. On the other hand, if the Committee applied criteria akin to the reasonably necessary standard in determining the mode of payment, the Plan might be properly characterized as a pension. However, in the instant case, the Court is compelled, pursuant to § 541(a)(1), to look to Debtor's interest in the Profit Sharing Plan as of the commencement of the case only. On that date, Flygstad could quit his job and withdraw $40,000.00.

Similarly, determining whether a profit sharing plan is a "pension or similar plan" may also be affected by the extent of the debtor's control. In *In re Miller*, 33 B.R. 549 (Bkrtcy.D.Minn.1983), a profit sharing plan was held nonexempt pursuant to § 522(d)(10)(E) partly because the funds involved were not reasonably necessary for support, and partly because the debtor had ready access to the funds for certain specified uses including the alleviation of financial hardship. In light of the control which the Debtor held over the plan funds, the Court characterized the profit sharing plan as a "savings account". *Miller*, 33 B.R. at 551.

A profit sharing plan that operates like a savings account, where debtors can withdraw funds at their own discretion, cannot be exempted under § 627.6(9)(e). By comparison, a pension plan is intended to function as a wage substitute at some future date; as retirement income providing for basic needs. To fulfill this function the plan funds must be available only in specified circumstances consistent with the intent of the plan.

 In the case at bar, the Debtor may gain access to his vested interest in the profit sharing plan by quitting his job. For a 54-year-old man with limited skills and a modest income, this is an extreme act that cannot be equated with a withdrawal from a savings account. Thus, in terms of the control exercisable by the Debtor the profit sharing plan is found to be a "pension or other plan" as contemplated by § 627.-6(9)(e).

However, to qualify for exemption a profit sharing plan must also meet the "reasonably necessary" standard. The determination of whether a large lump sum payment, in this instance, $40,000.00, is reasonably necessary for the support of the Debtor and any dependent is a difficult one. Rarely will the entire lump sum be necessary for present support. The whole amount may be necessary for future support, however, depending on the needs of the debtor, other income of the debtor, and the income stream that the lump sum can generate. The record in this proceeding is insufficient to allow the Court to make a determination of whether the profit sharing plan, or any part thereof, is reasonably necessary for the support of the Debtor.

### ORDERS

IT IS HEREBY ORDERED that Trustee's Objection to Exemption of the Retirement Fund is overruled both as to the Pre-ERISA Employee Contribution and the ERISA Qualified Fund.

IT IS FURTHER ORDERED that Trustee's Objection to Exemption of the Profit Sharing Plan is continued and shall be set for hearing on the sole issue of whether and to what extent Debtor's rights in payments under the Profit Sharing Plan are reasonably necessary for the support of the Debtor and any dependents.