**In re Gary Dennis BOWEN and Deborah Jean Bowen, d/b/a Farmers, Debtors.**

**In re Douglas John BOWEN and Julie Gloe Bowen, d/b/a Farmers, Debtors.**

Bankruptcy Nos. 486–00367, 486–00366.

United States Bankruptcy Court,
D. South Dakota.

Dec. 9, 1987.

A. Thomas Pokela, Sioux Falls, S.D., Chapter 7 Trustee, pro se.

Vance R.C. Goldammer, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S.D., for Chapter 7 Trustee Pokela.

Rick A. Yarnall, Moore, Rasmussen, Kading & McGreevy, Sioux Falls, S.D., for debtors.

Jeffrey D. Gednalske, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for T & R Elec. Supply, Inc.

## MEMORANDUM DECISION

PEDER K. ECKER, Chief Judge.

### INTRODUCTION

This matter is before the Court on the Chapter 7 trustee's objections to claimed exempt personal property in the above-entitled cases. The parties have agreed to consolidate the two cases for the purpose of determining this matter. Specifically, the trustee contends that the interests of the debtors Deborah Bowen and Douglas Bowen in a profit-sharing plan established by their employer are included in their bankruptcy estates, are not exempt under federal or South Dakota law, and should be turned over to the trustee for distribution to creditors. On the other hand, the debtors and their employer, T & R Electric Supply, Inc. (T & R Electric), insist that the debtors' interests in the ERISA-qualified retirement plan are excluded from the bankruptcy estate.

A hearing on the trustee's objections to the claimed exempt property was held in Sioux Falls, South Dakota, on June 12, 1987. The material facts are as follows.

### BACKGROUND

Debtor Deborah Bowen and her husband, Gary Bowen, filed a joint bankruptcy petition under Chapter 7 of the Bankruptcy Code on June 9, 1986. On the same day, debtor Douglas Bowen and his wife, Julie Bowen, also filed a joint petition under Chapter 7. Deborah Bowen has been employed by T & R Electric of Colman, South Dakota, for approximately sixteen years. Douglas Bowen has been employed by T & R Electric for approximately fifteen years. Neither Deborah nor Douglas is a shareholder, officer, or director of the company.

In 1967, T & R Electric established a profit-sharing retirement plan for the benefit of its employees. The plan was amended in 1976 to comply with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and to qualify for tax purposes under the Internal Revenue Code, 26 U.S.C. § 401(a). Both Deborah and Douglas Bowen are participants in their employer's ERISA-qualified plan.

Each year, T & R Electric and its accountants determine whether the company will make a contribution to the retirement plan. If an employer contribution is to be made, then the amount of the contribution is determined. Allocations to each employee's account are made in the proportion that the earnings (income, wages, salaries, fees, and commissions) of each participant bear to the total earnings of all eligible participants.

Employer contributions to the plan vest at the rate of ten percent for each year of vesting service, with one hundred percent vesting after the completion of ten years of service, or upon normal retirement age or permanent disability. In addition, the participants may make nondeductible voluntary contributions to the trust, which voluntary contributions may be withdrawn at any time prior to termination of service with the employer.

The plan agreement, as adopted by T & R Electric, places certain restrictions on the funds in the plan trust. It does not allow withdrawals at any time from the employer's contributions. Participants are not al-

lowed to obtain loans from their accounts, to have life insurance policies on their lives purchased under the plan, or to direct the investment of their accounts. In addition, the retirement plan contains the following anti-alienation clause:

> Except as otherwise expressly permitted by the Plan or required by law, the interests of persons entitled to benefits under the Plan may not in any manner whatsoever be assigned or alienated, whether voluntarily or involuntarily, or directly or indirectly. The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a qualified domestic relations order, as defined in Section 414(p) of the Internal Revenue Code, or any domestic relations order entered before January 1, 1985.

The distribution of a participant's accrued benefits begins upon a participant's termination of service. Termination of service includes: 1) retirement on or after normal retirement age, 2) permanent disability, 3) resignation or discharge from employment, or 4) failure to return to active work after an authorized leave of absence or temporary layoff. Distribution also is made to a beneficiary upon the death of an employee-participant. Distribution will occur by one or more of three methods: a lump-sum payment, fixed-period installments, or the purchase of a non-transferable period-certain annuity contract.

In the present cases, debtors Deborah Bowen and Douglas Bowen each have worked for T & R Electric for over ten years, and thus are fully vested in their employer contribution accounts. No voluntary contribution amounts attributable to these debtors remain in the plan trust. Both debtors are currently employed by T & R Electric. Thus, the trust funds at issue are fully vested employer contributions from which distribution has not commenced.

In addition, neither debtor has dominance or control over the corpus of the plan trust.

They are not shareholders, directors, or officers of the employer corporation. Deborah Bowen is an "Authorized Employer Representative" for the plan, but this function involves only clerical duties such as supplying employee histories and payroll data. She has no decision-making authority to direct distribution under the plan.

### ISSUES

The principal issues raised are:

1. Whether the debtors' interests in the ERISA-qualified profit-sharing plan established by their employer are included in their bankruptcy estates pursuant to 11 U.S.C. § 541.
2. Whether the debtors' interests in the plan are exempted from their bankruptcy estates.
   a) Whether the debtors' interests in the plan are exempted under federal nonbankruptcy law.
   b) Whether the debtors' interests in the plan are exempted under the South Dakota Codified Laws.
3. Whether S.D.C.L. § 3–12–115 deprives the debtors of their right to equal protection of the laws pursuant to the Fourteenth Amendment of the United States Constitution, if that provision exempts benefits accruing to public employees under the South Dakota Retirement System.
4. Whether S.D.C.L. § 3–12–115 violates Article 3, Section 23 of the South Dakota Constitution, as special legislation.

### DISCUSSION

#### First Issue

■ As to the first issue, this Court holds that the interests of the debtors in the T & R Electric profit-sharing plan are included in their respective bankruptcy estates. This Court recognizes the split of authority among the circuit courts of appeal in delineating the extent of the exclusion from property of the estate contained in 11 U.S.C. § 541(c)(2). This Court, nevertheless, must follow the controlling authority of the Eighth Circuit Court of Appeals

as stated in *In re Graham*, 726 F.2d 1268 (8th Cir.1984). The application of *In re Graham* to the present facts is based on the following discussion.

The filing of a Chapter 7 bankruptcy petition creates a bankruptcy estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history of Section 541 indicates that this definition was meant to be "broad." *See* S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868 (hereinafter "Senate Report"); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6322–24 (hereinafter "House Report"); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Graham*, 726 F.2d at 1270. The estate "includes all kinds of property, including tangible and intangible property, causes of action ... and all other forms of property currently specified in Section 70a of the Bankruptcy Act." Senate Report at 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5868; House Report at 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6322.

Section 541(c) provides a narrow exception to the all-encompassing definition of estate property. Subparagraph (1) of that subsection invalidates any restriction or condition on the transfer of a debtor's interest in property to insure that all interests of the debtor in property will become property of the estate. *See* 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1987). Subparagraph (2) states the following exception to this rule: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

The key phrase in Section 541(c)(2) is "applicable nonbankruptcy law." *See In re Flygstad*, 56 B.R. 884, 886 (Bankr.N.D. Iowa 1986). The debtors, Deborah Bowen and Douglas Bowen, argue that the anti-alienation, or anti-transfer, provision in the T & R Electric plan instrument, as required by ERISA, is enforceable against creditors under "applicable nonbankruptcy law" and thus is enforceable against the Chapter 7 trustee. In other words, the funds in the plan trust should not be transferred to the bankruptcy estate. To support this argument, the debtors refer to the legislative history of Section 541(c)(2): "Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a *spendthrift* trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." House Report at 369, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6325 (emphasis added); *cf.* Senate Report at 83, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5869 (the Senate version contained "reasonably necessary" support limitation language). The debtors allege that the T & R Electric retirement plan is a spendthrift trust under South Dakota law, and thus is excluded from the bankruptcy estate pursuant to Section 541(c)(2).

The Eighth Circuit Court of Appeals has held that ERISA plan benefits are never excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). *In re Graham*, 726 F.2d at 1271–73. Three bases for this holding can be discerned in the *Graham* opinion. First, the court of appeals stated:

> The change in the scope of property of the estate effectuated by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provisions of the Code and the preemption provision of ERISA all convince us that Congress did not intend "applicable nonbankruptcy law" to include ERISA. Rather, Congress only intended by § 541(c)(2) to preserve the status [of] *traditional* spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act (emphasis added).

Later in its opinion, the court reiterated: "The legislative history of § 541(c)(2), however, establishes that Congress intended by that section to preserve the status *traditional* spendthrift trusts had under the old Act." *Id.* at 1271 (emphasis added). The two references to "traditional" spendthrift

trusts clearly imply that the court narrowly construed Section 541(c)(2) to preserve only those spendthrift trusts contemplated under the 1898 Bankruptcy Act, and not the ERISA-qualified retirement plans created by Congress in 1974. *See In re McKenna,* 58 B.R. 221, 222 (Bankr.N.D.Iowa 1985); Seiden, *Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?* (first installment), 61 Am. Bankr.L.J. 219, 238, 252–53 (Summer, 1987) (author classifies *Graham* decision under theory that an ERISA-qualified plan and trust does not constitute the type of excludable trust encompassed by Section 541(c)(2)).

Second, the Eighth Circuit did not rely on a state spendthrift trust analysis in reaching its decision in *Graham. See Flygstad,* 56 B.R. at 887. The *Graham* bankruptcy court had considered whether the ERISA trust should be excluded from the bankruptcy estate as a spendthrift trust under Iowa law. *In re Graham,* 24 B.R. 305 (Bankr.N.D.Iowa 1982).[1] The Eighth Circuit, however, did not distinguish between various types of ERISA plans and made no exception for those which but for bankruptcy law would constitute valid spendthrift trusts under state law. *McKenna,* 58 B.R. at 222. Moreover, the *Graham* bankruptcy court subsequently noted the difference between its treatment of the ERISA plan (using a spendthrift clause analysis), and the treatment rendered by the Eighth Circuit. *See Flygstad,* 56 B.R. at 887; *see also In re West,* 64 B.R. 738 (Bankr.D.Or. 1986).[2] The Iowa court concluded that "it is unnecessary to examine the provisions of the pension plan to determine whether it

might be excluded from the estate as a valid spendthrift trust." *Flygstad,* 56 B.R. at 887. Thus, the Eighth Circuit's failure to conduct a "spendthrift trust" analysis implies that ERISA plans are never excluded from the bankruptcy estate, whether or not they are valid spendthrift trusts under state law. *See McKenna,* 58 B.R. at 223; *Flygstad,* 56 B.R. at 887.

Third, the *Graham* court placed great weight on the fact that the federal exemption scheme under Section 522(d) provides an exemption for private pension plans. *Graham,* 726 F.2d at 1272; *see also In re West,* 64 B.R. at 741. The court stated:

There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code's *exemption* provision, clearly indicating that they were intended and assumed to be part of the estate.

*Graham,* 726 F.2d at 1272 (emphasis in the original). In addition, the court commented that "opt out" states also provide exemptions for benefits from various public and private employee pension plans. *Id.* Thus, the Eighth Circuit found what it called a "coherent scheme" in regard to debtors' pension rights. "The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start, they may then be exempted out." *Id.* at 1272–73. Clearly, the *Graham* court treated the question of pension rights as a matter of exemption, not exclusion, from the estate.

---

1. The bankruptcy court concluded that the "Graham ERISA fund" was not a spendthrift trust and thus was property of the bankruptcy estate. *Id.* 24 B.R. at 310.

2. In *West,* the Oregon bankruptcy court also acknowledged the difference between the treatment of the ERISA plan in the *Graham* bankruptcy court opinion and the *Graham* Eighth Circuit opinion. The *West* court discussed the differing interpretations of Section 541(c)(2) by the Fifth, Eighth, Ninth, and Eleventh Circuit Courts of Appeal. *See West,* 64 B.R. at 740–42.

It correctly stated that, according to the Eighth Circuit in *Graham,* ERISA plans are never excluded from the estate by Section 541(c)(2). *Id.* at 741; *see also In re Sundeen,* 62 B.R. 619 (Bankr.C.D.Ill.1986) (*Graham* holds that all qualified pension plans are part of the bankruptcy estate). The *West* court, however, rejected the *Graham* position. It chose to follow the Fifth Circuit's approach in *In re Goff,* 706 F.2d 574 (5th Cir.1983), and apply a spendthrift trust analysis.

Based on the Eighth Circuit's use of the phrase "traditional spendthrift trust," its failure to conduct a state spendthrift trust analysis on the provisions of the Graham ERISA plan, and its emphasis on the available exemptions, the *Graham* case mandates that a debtor's interest in an ERISA retirement plan is property of the bankruptcy estate. *See McKenna,* 58 B.R. at 222; *Flygstad,* 56 B.R. at 887. Therefore, the interests of debtors Deborah and Douglas Bowen in the T & R Electric retirement plan are included in their respective bankruptcy estates. This Court next must consider whether the debtors' interests are exempted from the bankruptcy estates pursuant to federal or state law.

### Second Issue

As to the second issue, this Court holds that the debtors' interests in the T & R Electric retirement plan are not exempt assets of the bankruptcy estates under federal nonbankruptcy law or South Dakota law. In *Graham,* the Eighth Circuit held that Congress did not intend to include ERISA plans within the other "Federal law" exemption of Section 522(b)(2)(A). *Graham,* 726 F.2d at 1274. Further, an interest in a private employee retirement plan, not in pay status, does not qualify as exempt property under any provision of the

South Dakota Codified Laws. This holding is based on the following discussion.

### Federal Nonbankruptcy Law Exemption

Under the provisions of the Bankruptcy Code, a debtor is entitled to certain "exemptions" of property from the bankruptcy estate. 11 U.S.C. § 522. Pursuant to subsection (1) of subparagraph (b) of Section 522, South Dakota has chosen to "opt out" of the federal bankruptcy exemption scheme.[3] S.D.C.L. § 43–31–30 (1983); S.D.C.L. § 43–45–13 (1983). Therefore, South Dakota debtors are allowed only federal nonbankruptcy and state-created exemptions. *See* 11 U.S.C. § 522(b)(2)(A).

It first must be determined whether the debtors' plan benefits are exempted from the bankruptcy estates under a federal law other than Title 11. A debtor is allowed to exempt "any property that is exempt under Federal law, other than subsection (d) of this section." 11 U.S.C. § 522(b)(2)(A). The House and Senate Reports on Section 522 provide a representative list of items that may be exempted under federal laws other than Title 11.[4] ERISA plans are not specifically included in the list.

The Eighth Circuit, in *Graham,* held that Congress did not intend to include ERISA plans within the other "federal law" exemptions of Section 522(b). *Graham,* 726

---

3. Congress gave the states the authority to restrict debtors to state exemptions. 11 U.S.C. § 522(b)(1) provides in relevant part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate—
> (1) property that is specified under subsection (d) of this section, *unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize;* or, in the alternative, (emphasis added)
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and....

4. Property exempted includes:
Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;
Social security payments, 42 U.S.C. 407;

Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717;
Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;
Civil service retirement benefits, 5 U.S.C. 729, 2265;
Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;
Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);
Veterans benefits, 45 U.S.C. 352(E);
Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and
Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.
S.Rep. No. 989, 95th Cong., 2d Sess. 75, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5861; H.Rep. No. 595, 95th Cong., 2d Sess. 360 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6316.

F.2d at 1274. The court recognized that this list was not meant to be exclusive, but stated that the failure to include ERISA plan benefits was indicative of Congressional intent that ERISA was not a "federal law" upon which a Section 522(b)(2)(A) exemption could be based. *Id.; see also McKenna,* 58 B.R. at 224; *Flygstad,* 56 B.R. at 888. Furthermore, the benefits listed in the legislative history were all "peculiarly federal in nature, created by federal law, or related to industries traditionally protected by the federal government." *Graham,* 726 F.2d at 1274. Conversely, ERISA regulates private employer pension systems. *Id.* Thus, ERISA plan benefits are not exempt property pursuant to the nonbankruptcy federal law portion of Section 522(b)(2)(A). *Id.; McKenna,* 58 B.R. at 224; *Flygstad,* 56 B.R. at 888; *In re Scott,* Case No. 385–00052 (Bankr.D.S.D. Feb. 10, 1986).

It should be noted that other circuit courts of appeal also have reached this conclusion.[5] For example, under a similar set of facts, the Eleventh Circuit stated that Congress knew of the much-debated and comprehensive Section 522 when it issued the House and Senate Reports on Section 522(b)(2)(A) in 1977 and 1978, and yet did not include ERISA in those reports. *Lichstrahl,* 750 F.2d at 1491, *citing Goff,* 706 F.2d at 585, and *Graham,* 726 F.2d at 1274. The court noted that when Congress drafted Section 522, it referred to ERISA in the alternate federal exemptions listed in

Section 522(d). *Id.*[6] The *Lichstrahl* court concluded that the failure to mention ERISA in connection with Section 522(b) was intentional. *Lichstrahl,* 750 F.2d at 1491.

This Court follows the controlling authority of *In re Graham* and the persuasive authority of the Fifth, Ninth, and Eleventh Circuits, and holds that the debtors' interests in the T & R Electric retirement plan are not exempt property under federal nonbankruptcy law. The debtors, however, argue that the passage of the Retirement Equity Act of 1984,[7] which created an exception to the anti-alienation provisions of ERISA, flaws the *Graham* court analysis of Section 522(b)(2)(A). The REA permits a "qualified domestic relations order" to reach benefits in an ERISA-qualified pension plan, but such a distribution does not result in a prohibited assignment or alienation. *See* 29 U.S.C. § 1056(d)(3)(A). The essence of the debtors' argument is that Congress did not clarify the relationship between ERISA and the Bankruptcy Code exemptions at the time it drafted the REA, and thus it did not view the bankruptcy laws as creating any prohibited alienation of ERISA trust benefits. Their argument negatively implies that Congress intended ERISA anti-alienation provisions to create a federal non-bankruptcy exemption pursuant to 11 U.S. C. § 522(b)(2)(A), and therefore no need existed to provide an exception to the anti-

---

5. *See In re Daniel,* 771 F.2d 1352, 1361 (9th Cir.1985); *In re Lichstrahl,* 750 F.2d 1488, 1491 (11th Cir.1985); *In re Goff,* 706 F.2d 574, 585 (5th Cir.1983).

6. 11 U.S.C. § 522(d)(10)(E) exempts:
   (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
   (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
   (ii) such payment is on account of age or length of service; and
   (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or

409 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 401(a), 403(a), 403(b), 408, or 409).
   A recent article correctly points out that no specific reference to ERISA exists in Section 522(d)(10)(E) or anywhere else in the Bankruptcy Code. *See* Seiden, *Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?* (second installment), 61 Am.Bankr.L.J. 301, 314 (Fall, 1987). Some courts, however, have held that the Section 522(d)(10)(E) exemption for rights to plan payments that are reasonably necessary for support can include rights to payment from an ERISA-qualified plan. *Id.; see also id.* at Section III.B.1., entitled "Federal Bankruptcy Exemption" (Bankruptcy Code Section 522(d)(10)(E)).

7. Pub.L. No. 98–397, 98 Stat. 1426 (1984).

alienation provisions for bankruptcy proceedings.

The debtors' argument presumes too much, for several reasons. First, reliance upon congressional silence is always tenuous. *See Helvering v. Hallock,* 309 U.S. 106, 119–20, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940) ("To explain the cause of non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities."). Second, if Congress intended the anti-alienation provisions to provide a nonbankruptcy federal exemption, the passage of the REA was a perfect opportunity to clarify the situation in the bankruptcy setting, but Congress failed to do so. *Cf.* Comment, *Creditors' Rights in Bankruptcy to Qualified Retirement Benefits,* 53 U.M.K.C.L.Rev. 626, 644 (Summer 1985) (the passage of the 1984 Act also was a perfect opportunity for Congress to clarify the Section 541(c)(2) conflict). Third, no indication exists in the legislative history to the REA that Congress was aware of ERISA's exclusion from the list of nonbankruptcy federal law exemptions. *See* S.Rep. No. 989, 98th Cong., 2d Sess. 18–23, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 2547, 2564–69. Until Congress specifically addresses any conflict or ambiguity between ERISA and the Bankruptcy Code, this Court must follow the controlling authority of the Eighth Circuit in *Graham.*

### *South Dakota Exemptions*

Next, it must be determined whether the debtors' plan benefits are exempt from the bankruptcy estates under any South Dakota exemption law. This Court holds that the debtors' interests in the T & R Electric retirement plan are not exempt assets under South Dakota law, as claimed in the debtors' amended bankruptcy schedules.[8] This holding is based on the following discussion.

■ Debtors Deborah Bowen and Douglas Bowen each have amended their schedules to exempt the T & R Electric plan benefits pursuant to S.D.C.L. § 58–12–4. Section 58–12–4 exempts the proceeds of a policy of life or health insurance, or the proceeds of an endowment policy, to the extent of $20,000.00.[9]

The profit-sharing retirement plan at issue is not a policy of insurance. "Insurance" is defined as a "contract whereby one undertakes to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies." S.D.C.L. § 58–1–2(1) (Supp. 1987). Indemnification implies the sharing of loss among many persons. *See Group Life & Health Ins. Co. v. Royal Drug Co., Inc.,* 440 U.S. 205, 211–12, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). Although the T & R Electric plan may pay benefits upon death or disability, the essence of the plan is not the sharing of loss pursuant to the payment of a "premium." *See Huff v. St. Joseph Mercy Hospital of Dubuque, Corp.,* 261 N.W.2d 695, 700 (Iowa 1978) ("insurance policy" denotes a contract by which one party, for a compensation called a "premium," assumes particular risks of the other party). The employees of T & R Electric do not pay "premiums" to the plan trustees, the trust does not indemnify the employees for any loss, and promises to pay only the vested amount in the trust upon termination, disability, retirement, or death. Thus, the debtors' interests in the T & R Electric plan are not "proceeds" of a life or health insurance policy.

---

**8.** The debtors in both cases were granted leave to amend their schedules to claim as exempt their interests in the T & R Electric profit-sharing plan trust pursuant to S.D.C.L. §§ 58–12–4, 58–12–6, 43–45–3, 3–12–115.

**9.** S.D.C.L. § 58–12–4 states in relevant part:
The proceeds of a policy of life or health insurance to the total amount of twenty thousand dollars only, ... shall inure to the separate use of the insured, his surviving spouse or children, as the case may be, independently of the creditors of any of them and shall not be subject to the payment of the debts of any one or all of such persons, ... and the proceeds of an endowment policy, payable to the insured on attaining a certain age, to the extent of twenty thousand dollars shall at all times be exempted from the debts of such spouse or children of the insured; ....
S.D.C.L. § 58–12–4 (1978).

The T & R Electric retirement plan also is not an endowment policy. An endowment insurance policy is, in general, a contract to pay the assured, in consideration of a premium or premiums to be paid within a certain limited time, a specified sum of money at the termination of a certain designated period, if the assured is now living, but to a person named, if the assured dies before the specified time. 1 *Couch on Insurance 2d* § 1:46 (rev. ed. 1984). Again, the debtors have not paid a "premium" to the plan, with the expectation of certain sums to be paid at the end of a certain designated period. Therefore, the T & R Electric retirement plan does not have the characteristics of either an insurance or endowment policy, and the debtors' interests in the plan are not exempted pursuant to S.D.C.L. § 58–12–4.

■ The debtors also have claimed their interests in the plan exempt pursuant to S.D.C.L. § 58–12–6. That provision of the South Dakota statutes exempts any benefits, rights, privileges, and options under any annuity contract. S.D.C.L. § 58–12–6 (1978).[10]

The debtors' interests in the profit-sharing plan cannot be construed as annuity contracts on the date of the filing of their bankruptcy petitions.[11] At the time the debtors in these Chapter 7 cases filed their petitions, they were employed at T & R Electric. Their benefits were not in "pay status." The debtors had not elected to receive their benefits by a lump sum, by fixed-period installments, or by the purchase of a non-transferable period-certain annuity contract. Unless and until the debtors elect to receive the T & R Electric profit-sharing plan proceeds as an annuity, the plan cannot be construed as an annuity under South Dakota law. *In re Scott*, Case No. 385–00052 at 2; *see also In re*

*Voelker*, Case No. 482–00318 (Bankr.D.S.D. Apr. 10, 1984) (IRA account not exempt as an annuity). Accordingly, the debtors' interests in the ERISA plan are not exempt assets pursuant to S.D.C.L. § 58–12–6.

■ Next, the debtors claim the plan interests as exempt pursuant to S.D.C.L. § 43–45–3. This provision exempts the homestead of the debtor from the bankruptcy estate. S.D.C.L. § 43–45–3(1) (1983). The homestead is defined as "the house used as a home by the owner thereof, being real property or a mobile home...." S.D.C.L. § 43–31–2 (1983). Clearly, the plan interests are neither the houses nor mobile homes of the debtors, nor proceeds from the sales of the debtors' houses. *See* S.D.C.L. § 43–45–3(2).

■ Finally, the debtors claim the plan benefits as exempt pursuant to S.D.C.L. § 3–12–115 (1985). S.D.C.L. § 3–12–115 exempts contributions and benefits accruing to a debtor under the South Dakota Retirement System. *See* S.D.C.L. ch. 3–12. T & R Electric of Colman, South Dakota, is not a participant in the South Dakota Retirement System. *See* S.D.C.L. § 3–12–46. T & R Electric employees are not among those employees included in the SDRS. *See* S.D.C.L. § 3–12–62. Thus, the profit-sharing benefits are not exempt pursuant to S.D.C.L. § 3–12–115.

Accordingly, this Court holds that the interests of debtors Deborah and Douglas Bowen are not exempt assets of the estates under the South Dakota exemption statutes, as claimed in their amended schedules.

### Third and Fourth Issues

As to the third and fourth issues, this Court cannot properly consider these matters without the certification of the fact of

---

**10.** S.D.C.L. § 58–12–5 defines an annuity contract:

> An annuity contract within the meaning of §§ 58–12–6 to 58–12–10, inclusive, shall be any obligation to pay certain sums at stated times, during life or lives, or for a specified term or terms, issued for a valuable consideration, regardless of whether or not such sums are payable to one or more persons, jointly or

> otherwise but does not include payments under life insurance contracts at stated times during life or lives, or for a specified term or terms.

S.D.C.L. § 58–12–5 (1978).

**11.** A debtor's right to claim an exemption is determined on the date of the filing of the bankruptcy petition. 11 U.S.C. § 522(b)(2)(A).

these constitutional challenges to the Attorney General for the State of South Dakota. *See* 28 U.S.C. § 2403(b) (1987). It would not have been necessary to certify the fact of the challenges to the South Dakota Attorney General, if the results of the first two issues presented here had been different. Since this Court now holds that the debtors' profit-sharing benefits are the property of the estates and are not exempt assets pursuant to federal nonbankruptcy or South Dakota law, the Court must consider the constitutionality of S.D.C.L. § 3–12–115.

The debtors raised two constitutional issues. First, the debtors contended that S.D.C.L. § 3–12–115 deprives them of equal protection of the laws pursuant to the Fourteenth Amendment to the United States Constitution, if this provision exempts benefits accruing to public employees under the South Dakota Retirement System, but fails to exempt benefits accruing to private-sector employees under ERISA-qualified profit-sharing retirement plans.[12] Second, they asserted that the exemption afforded to public employees pursuant to S.D.C.L. § 3–12–115 violates Article 3, Section 23 of the South Dakota Constitution, as "special legislation."

At this point, the Court cannot decide these issues. 28 U.S.C. § 2403(b) requires that the Court certify the fact of the constitutional questions to the Attorney General for the State of South Dakota. In addition, insufficient evidence and argument have been presented on these issues. Thus, this Court is unprepared to rule on the constitutionality of S.D.C.L. § 3–12–115.

Accordingly, the above and foregoing hereby constitute the Court's Findings of Fact and Conclusions of Law for Issues One and Two in the above-entitled matters pursuant to Bankruptcy Rules of Procedure 7052 and 9014 and Federal Rule of Civil Procedure 52. The Court shall certify to the Attorney General for the State of South Dakota the fact that the debtors have questioned the constitutionality of S.D.C.L. § 3–12–115. The Court will permit the State of South Dakota to intervene to present evidence and argument on the questions of constitutionality. The parties to this proceeding also may present additional evidence and argument on these issues to the Court, if so desired. The Attorney General and counsel will have thirty (30) days from entry of the Order of Certification in which to notify the Court of their intent to submit evidence and argument. Counsel for the Chapter 7 Trustee, A. Thomas Pokela, is directed to submit an appropriate order for Issues One and Two in accordance with Bankruptcy Rule of Procedure 9021.

---

12. Debtors' brief raised the equal protection issue. The case of *In re Lucarno,* 23 B.R. 622 (Bankr.D.Md.1982), which debtors cite to support the equal protection argument, did not involve an equal protection question. Instead, the Maryland bankruptcy court declared a homestead exemption unconstitutional pursuant to the Supremacy Clause of the United States Constitution, article 6, cl. 2. In the present case, the debtors did not argue that S.D.C.L. § 3–12–115 unconstitutionally conflicts with federal bankruptcy law. Therefore, the Supremacy Clause issue is not before this Court.